**Ruth CALES, Plaintiff,**

v.

**HOWELL PUBLIC SCHOOLS, Daniel McCarthy, Mary Steinhelper and Colleen Wise, jointly and severally, Defendants.**

No. 82–40521.

United States District Court,
E.D. Michigan, S.D.

Nov. 22, 1985.

Michael K. Hegarty, Brighton, Mich., for plaintiff.

Robert P. Keil, Flint, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

Before the Court are plaintiff's Motion for Partial Summary Judgment and defendants' Motion for Summary Judgment. The Court has asked the parties to submit supplemental briefs addressing the Supreme Court decision in *New Jersey v. TLO*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 and on another occasion to analyze the theory of liability of each defendant separately. The parties have complied, and the matter is now properly before the Court.

## ANALYSIS

The most logical approach in dealing with the issues before the Court is to address plaintiff's claims as to each defendant separately. However, before so doing, a brief recitation of the stipulated uncontested facts is in order.

At all pertinent times defendant Howell Public Schools is and was a Michigan School District which owned and operated Howell High School in Howell, Michigan.

On April 30, 1980, Plaintiff Ruth Cales was 15 years of age and a 10th grade student at Howell High School assigned to the afternoon session.

On that day at a time when she was required to be in school session, she was observed by the Howell High School security guard, Joe Twohig, in the parking lot attempting to avoid detection by "ducking" behind a parked car. When confronted by Twohig and asked to identify herself, she gave a name other than her own.

Plaintiff was subsequently taken to the office of Assistant Principal Daniel McCarthy where she was made to dump the contents of her purse on a desk, said contents included Howell High School "readmittance slips" which were improperly in Plaintiff's possession.

Plaintiff was then instructed to turn her jean pockets inside-out, and she subsequently completely removed said jeans. Plaintiff was then required to bend over so Defendant Steinhelper could visually examine the contents of her brassiere.

The basis for the "search" was the belief of Assistant Principal Daniel McCarthy that the Plaintiff was in possession of illegal drugs.

During the "search" the only persons present were Plaintiff, Defendant Steinhelper, Assistant Principal, and Defendant Wise, Secretary to Defendant McCarthy who also was an Assistant Principal. At no time was Plaintiff's person or body touched in any manner.

## A. HOWELL PUBLIC SCHOOLS

■ The appropriate standard for determining whether this defendant can be held liable for the alleged civil rights violation in this case is found in *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In *Monell*, the Court ruled that § 1983 liability could

be imposed on a unit of local government upon a showing that:

> The action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation or rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decision-making channels...

*Id.* at 690–91, 98 S.Ct. at 2035–36.

Thus, in this case, plaintiff must show that the Howell Public Schools had a policy or custom concerning the strip search of students which led to the alleged violation of plaintiff's constitutional rights. The record as it now exists is insufficient to allow this Court to enter summary judgment on behalf of either party on this issue. During her deposition, Mary Steinhelper testified that the authority to search came from the Student Code of Conduct. (p. 13) She later indicates that she is unsure whether a written policy concerning student searches exists. (p. 14) Finally, she indicates that while the high school administrators discussed the issue of student searches, she did not know whether the guidelines mentioned at the time represented the policies of the Howell School System. (p. 16) Clearly then a genuine issue of fact remains. Since local governmental bodies are not protected by qualified immunity, *see Owens v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), no further analysis as to the liability of Howell Public Schools is necessary.

### B. McCARTHY and STEINHELPER—LIABILITY

#### 1. DANIEL McCARTHY

As noted earlier, Mr. McCarthy did not take part in the search. Instead, he directed Mary Steinhelper to conduct the search. Consequently, it is more appropriate to analyze his conduct under a supervisory liability theory. Supervisory personnel are subject to liability where evidence establishes that they authorized [or] approved ... the unconstitutional conduct of the offending officers. *Ghandi v. Police Dept. of Detroit*, 747 F.2d 338, 351 (6th Cir.1984) citing *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir.1982).

#### 2. MARY STEINHELPER

The Supreme Court in *New Jersey v. TLO*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) recently articulated the standard to be applied in deciding whether the search of a student by school officials violates his or her Fourth Amendment rights.

> ... [t]he legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search. Determining the reasonableness of any search involves a twofold inquiry: first, one must consider "whether the ... action was justified at its inception," *Terry v. Ohio*, 392 U.S., [1] at 20 [88 S.Ct. 1868, at 1879, 20 L.Ed.2d 889]; second, one must determine whether the search as actually conducted "was reasonably related in scope to the circumstances which justified the interference in the first place," *ibid.* Under ordinary circumstances, a search of a student by a teacher or other school official will be "justified at its inception" when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction. (footnotes omitted)

*Id.* at ——, 105 S.Ct. at 744.

The facts of the instant case create an interesting situation. As previously men-

tioned, defendant McCarthy ordered the search, defendant Steinhelper conducted it. Thus, if defendant McCarthy was not justified in requesting the search, both he and defendant Steinhelper are liable. If, however, the search was justified, and if the scope of the search was reasonable, neither defendant can be held liable.

■ In addressing the first prong of the test, the Court again refers to the stipulated facts. Plaintiff was observed ducking behind a car in the Howell High School parking lot at the time she should have been in school. When questioned by a security guard, she gave a false name. Based on this conduct, defendant McCarthy concluded that plaintiff was involved in drugs and should be searched. It is clear that plaintiff's conduct created reasonable grounds for suspecting that some school rule or law had been violated. However, it does not create a reasonable suspicion that a search would turn up evidence of drug usage. Plaintiff's conduct was clearly ambiguous. It could have indicated that she was truant, or that she was stealing hubcaps, or that she had left class to meet a boyfriend. In short, it could have signified that plaintiff had violated any of an infinite number of laws or school rules. This Court does not read *TLO* so broadly as to allow a school administrator the right to search a student because that student acts in such a way so as to create a reasonable suspicion that the student has violated *some* rule or law. Rather, the burden is on the administrator to establish that the student's conduct is such that it creates a reasonable suspicion that a specific rule or law has been violated and that a search could reasonably be expected to produce evidence of that violation. If the administrator fails to carry this burden, any subsequent search necessarily falls beyond the parameters of the Fourth Amendment. Because the facts here establish that the search was not reasonable at its inception,

it is unnecessary to address the second prong of the *TLO* test.

## C. McCARTHY and STEINHELPER—IMMUNITY

In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court held that:

> ... government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Procunier v. Navarette,* 434 U.S. 555, 565, 55 L.Ed.2d 24, 98 S.Ct. 855 [861] (1978); *Wood v. Strickland,* 420 U.S. [308] at 322, 43 L.Ed.2d 214, 95 S.Ct. 992 [1001].

*Id.* at 818, 102 S.Ct. at 2738.

### 1. DANIEL McCARTHY

■ The events which served as the basis for this action occurred long before the Supreme Court's holding in *TLO* and the Sixth Circuit's ruling in *Tarter v. Rayback,* 742 F.2d 977 (6th Cir.1984). However, the principals underlying those decisions were clearly established at the time of this action. As noted in *Tarter:*

> It is beyond peradventure that school children do not shed their constitutional rights at the school house gate. *Tinker v. Des Moines Independent Comm. School Dist.,* 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969). It is well recognized that school officials are subject to constitutional restraints as state officials. *See, e.g., Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (due process hearing rights for school suspensions); *Tinker, supra.* (First Amendment rights available to students subject to application in light of special circumstances of the school environment.)

*Id.* at 981.[1]

The deposition of Mary Steinhelper clearly establishes that the defendants were

---

**1.** Moreover, several lower court cases had already applied the Fourth Amendment to school search cases. *See e.g., Jones v. Latexo Indep.* *School Dist.,* 499 F.Supp. 223 (E.D.Tex.1980); *Stern v. New Haven Comm. Schools,* 529 F.Supp. 31 (E.D.Mich.1981).

well aware that the students were entitled to Fourth Amendment protection. On page 15, Ms. Steinhelper indicates that the necessity of having probable cause before conducting a search was discussed at length at an administrators' meeting.

Thus, there can be no question that plaintiff had a clearly established right to be free from the unreasonable searches of school administrators. The only issue that was unclear at the time was the quantum of evidence necessary to justify the search. However, it is clear that defendants knew at a minimum that reasonable cause or reasonable suspicion was necessary to justify a search by school administrators.[2] Since the Court has already concluded that reasonable suspicion was lacking here, the Court must conclude that defendant McCarthy is not entitled to qualified immunity as a matter of law.

### 2. MARY STEINHELPER

 The applicability of qualified immunity to this defendant turns on the scope of the search rather than whether the search was justified. As the facts show, defendant Steinhelper was instructed by defendant McCarthy to search for drugs. She apparently did not question McCarthy as to the underlying facts which led to his decision, but rather, accepted that decision as being appropriate. (*See* Steinhelper Dep. pp. 3–4) Indeed, since Mr. McCarthy had been present at the administrators' meeting at which the probable cause to search issue was discussed, there was no need for her to do otherwise. As the record shows, defendant Steinhelper was instructed to search for contraband in the form of drugs. She looked in plaintiff's purse, in the pockets of plaintiff's jeans, and in plaintiff's brassiere.[3] At no time did she touch plaintiff. (Cales Dep. p. 30) Clearly the measures adopted by Ms. Steinhelper were rea-

sonably related to the objectives of the search. Moreover, the search was not excessively intrusive given plaintiff's age (15) and the seriousness of the infraction. Consequently, the court must conclude that defendant Steinhelper is entitled to qualified immunity as a matter of law.

### D. DEFENDANT COLLEEN WISE

 Defendant Wise was the secretary to defendant McCarthy. She was instructed by Mr. McCarthy to witness the search of plaintiff by defendant Steinhelper. At no time did she take an active role in the events alleged. Given the fact that defendant Wise merely observed the unconstitutional search at the direction of her superior, the Court must conclude as a matter of law that plaintiff cannot maintain an action under § 1983 against her.

### CONCLUSION

For the reasons set forth above, plaintiff's Motion for Partial Summary Judgment and defendants' Motion for Summary Judgment as to defendant Howell Public Schools are DENIED. Plaintiff's Motion is granted and defendants' Motion is denied as to defendant McCarthy. Defendants' Motion is granted and plaintiff's Motion is denied as to defendants Steinhelper and Wise.

IT IS SO ORDERED.

---

**2.** Indeed, virtually all other courts who had addressed the issue at that time had applied this lesser standard rather than the probable cause standard. *See Jones* at 236. *But see Pichu v. Wielgos,* 410 F.Supp. 1214 (E.D.Ill.1976) where the court applied the probable cause standard to a strip search for drugs.

**3.** While a dispute exists as to why plaintiff removed her jeans, the Court does not believe that this fact renders the search so much more intrusive so as to exceed a permissible scope.