*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0155p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

No. 03-1904

DAVID BEARD; THEO DOWNS, as next friend of Peggy
Shumway; PEGGY SHUMWAY; EDWARD GARIEPY, as
next friend of Alyssa Chappa; ALYSSA CHAPPA;
TAMARA BLEAU, as next friend of Robert Cook; ROBERT
COOK; RONALD FORD, SR., as next friend of Ronald
Ford, Jr.; RONALD FORD, JR.; NANCY HUSKINSON, as
next friend of Stacy Huskinson; STACY HUSKINSON,

                        *Plaintiffs-Appellees,*

        *v.*

WHITMORE LAKE SCHOOL DISTRICT,

                        *Defendant,*

 CHARMAINE BALSILLIE; BRIAN CARPENTER; JAY MUNZ;
WENDY LEMONS; SUE LANGEN,

                        *Defendants-Appellants.*

Nos. 03-1904/1942

No. 03-1942

DAVID BEARD; THEO DOWNS, as next friend of Peggy
Shumway; PEGGY SHUMWAY; EDWARD GARIEPY, as
next friend of Alyssa Chappa; ALYSSA CHAPPA;
TAMARA BLEAU, as next friend of Robert Cook; ROBERT
COOK; RONALD FORD, SR., as next friend of Ronald
Ford, Jr.; RONALD FORD, JR.; NANCY HUSKINSON, as
next friend of Stacy Huskinson; STACY HUSKINSON,

                        *Plaintiffs-Appellees,*

        *v.*

WHITMORE LAKE SCHOOL DISTRICT; CHARMAINE
BALSILLIE; BRIAN CARPENTER; JAY MUNZ; WENDY
LEMONS; SUE LANGEN,

                        *Defendants,*

R. MAYRAND, Officer,

                        *Defendant-Appellant.*

1

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-73657—George E. Woods, District Judge.

Argued:  January 26, 2005

Decided and Filed:  April 4, 2005

Before:  GUY and ROGERS, Circuit Judges; DOWD, District Judge.[*]

————————————

**COUNSEL**

————————————

**ARGUED:**  Timothy J. Mullins, G. Gus Morris, COX, HODGMAN & GIARMARCO, Troy, Michigan,
for Appellants.  Matthew E. Krichbaum, SOBLE & ROWE, LLP, Ann Arbor, Michigan, for Appellees.
**ON BRIEF:**  Timothy J. Mullins, G. Gus Morris, COX, HODGMAN & GIARMARCO, Troy, Michigan,
for Appellants.  Matthew E. Krichbaum, Richard A. Soble, SOBLE & ROWE, LLP, Ann Arbor, Michigan,
Michael J. Steinberg, Kary L. Moss, AMERICAN CIVIL LIBERTIES UNION, Detroit, Michigan, Scott
S. Yaldo, YALDO & DOMSTEIN, Bingham Farms, Michigan, for Appellees.

————————————

**OPINION**

————————————

ROGERS, Circuit Judge.  The defendants in this 42 U.S.C. § 1983 action appeal the district court's
denial of their motion for summary judgment based on a defense of qualified immunity.  This case stems
from a strip search of over twenty students that occurred after a student in a high school gym class reported
that her prom money had been stolen.[1]  The plaintiffs in this case include both male and female high school
students who were subjected to the search; the defendants are the teachers who were involved in the search
and the police officer who instructed the teachers to search the female plaintiffs.

The actions of the defendants in this case were unconstitutional.  However, at the time the searches
occurred, the law regarding the reasonableness of a strip search under these circumstances was not clearly
established.  The denial of summary judgment is therefore reversed.

**I.  Background**

On May 24, 2000, a student in the second-hour gym class at Whitmore Lake High School reported
to her gym teacher, Brian Carpenter, that her prom money had been stolen at some point during the class.
The school principal was absent on the date of the incident, so the acting principal, school teacher
Charmaine Balsillie, was advised of the theft.  Balsillie called the police to report the incident and asked
two female teachers, Sue Langen and Wendy Lemons, and one male teacher, Jay Munz, to assist her.

When Balsillie arrived at the gymnasium, the male students were in the boys' locker room, and the
female students were in the gymnasium. Lemons, Langen, and the female students searched the gymnasium
and the female students' backpacks.  Balsillie then went to the boys' locker room and told Carpenter that
the police were on their way.  At this time, Balsillie noticed Munz heading towards the shower area.

————————————

[*]The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

[1]According to the plaintiffs' first amended complaint, the amount of money missing was "a few hundred dollars."

Carpenter told Balsillie that they had searched the male students' backpacks, but had failed to locate the money. By the time Balsillie exited the locker room, Police Officer Mayrand had arrived.

Munz and Carpenter were the only defendants that participated in the search of the male students in the boys' locker room. Carpenter searched book bags and lockers, while Munz searched the boys individually in the shower room. The search consisted of the boys' individually lowering their pants and underwear and removing their shirts.[1] The boys were not physically touched. The teachers claim that the police arrived and came into the boys' locker room after about one-half of the boys had been searched. According to the teachers, Mayrand told Carpenter to continue searching the students and that teachers had "a lot more leeway" than police officers when it came to searching students. About twenty boys were searched.

Officer Mayrand also spoke to Balsillie and asked if the girls had been searched. According to Balsillie, Mayrand told her that the boys had been checked in their underwear and that the teachers needed to check the girls in the same way so as to prevent any claims of gender discrimination. Balsillie and Langen then took the female students into the girls' locker room where the girls pulled up their shirts and pulled down their pants while standing in a circle.[2] The girls were never touched and did not remove their underwear. About five girls were searched. The stolen money was never discovered.

## II. Analysis

The defendants appeal the district court's denial of their motion for qualified immunity in this 42 U.S.C. § 1983 action. The district court found that, at the time the searches occurred, the law clearly established that "[a] strip search of students for missing money in the absence of individualized suspicion is not reasonable," and accordingly denied the teachers' request for qualified immunity. With respect to Officer Mayrand, the district court found that the facts, taken in the light most favorable to the plaintiffs, supported a finding that Mayrand had subjected the female plaintiffs to a constitutional violation by setting the strip search in motion. The district court therefore denied summary judgment as to both the teachers and Officer Mayrand.[3]

The searches performed on the students in this case were unconstitutional. However, at the time the searches were performed, the law did not clearly establish that the searches were unconstitutional under these circumstances. The denial of summary judgment is accordingly reversed.

Although the denial of a motion for summary judgment is generally considered interlocutory and not appealable, a denial based on a determination that the defendant is not entitled to qualified immunity may be reviewed on appeal. *Solomon v. Auburn Hills Police Dept.*, 389 F.3d 167, 172 (6th Cir. 2004) (citing *Phelps v. Coy*, 286 F.3d 295, 298 (6th Cir. 2002)). When reviewing a district court's denial of

---

[1] The defendants and plaintiffs dispute some of the issues related to this search. The teachers claim that the boys were never told to remove their clothing; however, this is disputed by the plaintiffs. As we must take the facts in the light most favorable to the plaintiffs, we will assume that the boys were told to remove their clothing and that they did not do so voluntarily. There is also a dispute about whether the boys took off their underwear or just their pants. Again, taking the facts in the light most favorable to the plaintiff, we will assume that the boys took off their pants and underwear.

[2] Balsillie contends that she told the girls that if they were not comfortable removing their clothing, then they did not have to participate. The plaintiffs dispute this fact. Taking the facts in the light most favorable to the plaintiff, we will assume that the girls did not voluntarily consent to the search.

[3] The district court granted summary judgment to one officer, Jennings, who had been present at the school, but was unaware that the searches were taking place, and to one of the teachers, Lemons, who was not involved in the strip searches. These decisions are not being reviewed as part of this appeal.

qualified immunity, all facts are to be taken in the light most favorable to the plaintiffs[4] and the only issues appropriate for review are those that are "strictly legal." *Id.* (citing *Phelps*, 286 F.3d at 299). Because the availability of qualified immunity is a legal question, we review the decision of the district court *de novo*. *Id.* (citing *Thomas v. Cohen*, 304 F.3d 563, 568 (6th Cir. 2002)).

The doctrine of qualified immunity protects government officials who perform discretionary functions from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This court employs a three-part test when determining whether a grant of qualified immunity is proper:

> *First*, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. *Second*, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. *Third*, we determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900-01 (6th Cir. 2004) (citation omitted). If the answer to all three questions is yes, then qualified immunity is not proper. *Id*. at 901. In this case, the searches performed by the defendants were unconstitutional; however, at the time that the searches occurred, the law did not clearly establish the unlawfulness of the defendants' actions. We accordingly do not reach the third prong of the test—whether the plaintiff has offered sufficient evidence that the defendants' actions were unreasonable in light of clearly established law.

## A.  The Searches Violated the Fourth Amendment

The initial inquiry in determining whether a grant of qualified immunity is proper is whether the facts asserted, taken in the light most favorable to the plaintiffs, establish a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). In this case, approximately twenty male students were searched, in the absence of individualized suspicion and without consent, in the hopes of locating missing money. Approximately five female students were searched under similar circumstances, but were also required to remove their clothes in the presence of one another. Under these circumstances, the searches were a violation of the Fourth Amendment. Assuming *arguendo* that Officer Mayrand was aware of these circumstances when ordering the female students to be searched, his conduct was also unlawful.

As explained by the Supreme Court in *New Jersey v. T.L.O.*, 469 U.S. 325, 341 (1985), a school search violates the Fourth Amendment when the school undertakes a search of a student that is unreasonable. In *T.L.O.*, a school official searched a student's purse for cigarettes after the student had been caught smoking in the restroom. *Id.* at 328. Upon searching the purse, the school official found a pack of cigarettes and rolling papers, which were often used by students to smoke marijuana. *Id.* A further search of the purse revealed marijuana, a pipe, plastic bags, a substantial quantity of single dollar bills, an index card that listed the names of students owing her money, and two letters implicating her in marijuana dealing. *Id.* The court held that the Fourth Amendment applies to searches conducted by school authorities, *id*. at 336-37, but rejected strict adherence to a probable cause requirement. *Id.* at 341. Rather, the legality of a school search depends on its reasonableness under all the circumstances. *Id.* Determining the reasonableness of a school search involves a twofold inquiry: first, was the action justified at its inception; and second, was the search reasonably related in scope to the circumstances justifying the search. *Id.* In

---

[4] The plaintiffs assert that the defendants have failed to concede the facts in the light most favorable to the plaintiffs. Thus, the plaintiffs argue that this court should dismiss the appeal for want of jurisdiction. However, while some minor factual issues are in dispute, it does not appear that the resolution of these factual issues is needed to resolve the legal issue before us. Rather, the legal issue can be resolved while taking all disputed issues in the light most favorable to the plaintiffs.

general, "a search of a student by a teacher or other school official will be 'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *Id*. at 341-42. A search is generally "permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and nature of the infraction." *Id*. at 342. The search in *T.L.O.* was held to be reasonable. *Id*. at 347. The Court reasoned that school officials had reason to suspect that the student's purse contained cigarettes based on the accusation that she had been smoking in the restroom; the Court also concluded that, after the initial search of the student's purse revealed evidence of marijuana, a further search of the purse was justified. *Id.* at 344-48.

We assume, without holding, that the searches of both the male and female students were justified at their inception. That is, some search of the persons and effects of students may be warranted when substantial property has been reported recently stolen. The courts have held that lack of individual suspicion does not *ipso facto* render a search unreasonable. In the school context, the *T.L.O.* court expressly refrained from so holding. *Id*. at 342 n.8. *See also Skinner v. Ry. Labor Executives Ass'n*, 489 U.S. 602 (1989) (upholding policy of drug testing railway employees who violate safety rules or who are involved in accidents in the absence of individualized suspicion); *Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656 (1989) (upholding drug testing of customs officials who carry a firearm or work in drug interdiction in the absence of individualized suspicion); *Mich. Dep't of State Police v. Sitz*, 496 U.S. 444 (1990) (upholding sobriety checkpoints performed in the absence of individualized suspicion).

The scope of the searches in the instant case, however, viewing the facts in the light most favorable to the plaintiffs, does not pass constitutional muster. In making this determination, we are guided by the Supreme Court's analysis in *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646 (1995), which sets forth the relevant criteria for evaluating searches performed in the absence of individual suspicion. In *Vernonia*, the Court held to be reasonable a school's system policy of randomly drug testing student athletes even in the absence of individualized suspicion. *Id*. at 664-65. In so deciding, the Court looked to three factors: (1) the student's legitimate expectation of privacy, (2) the intrusiveness of the search, and (3) the severity of the school system's needs that were met by the search. *Id*. In *Vernonia*, the Court found the drug testing policy to be constitutional because student athletes had a decreased expectation of privacy by virtue of the voluntary nature of their participation, the invasion of the students' privacy was minimal, and the threat to the school system from unfettered drug use was great. *Id.* at 654-65.

## 1.  The Scope of the Searches of the Male Students

In light of the factors set forth in *Vernonia*, the searches performed on the male students in this case were in violation of the Fourth Amendment. First, the privacy interest here was great. Students of course have a significant privacy interest in their unclothed bodies. *See T.L.O.*, 469 U.S. at 337-38 (noting that a "search of a child's person . . . is undoubtedly a severe violation of subjective expectations of privacy"). The Supreme Court did note in *Vernonia*, however, that public school locker rooms "are not notable for the privacy they afford." 515 U.S. at 657. The boys were thus not deprived of a privacy interest as much as if they had been searched, for instance, in an office. However, the scope of the search did exceed what would normally be expected by a high school student in a locker room. As alleged by the plaintiffs, the boys were individually and directly examined as they unclothed. Moreover, unlike in *Vernonia*, the students did not "voluntarily subject themselves to a degree of regulation . . . higher than that imposed on students generally." 515 U.S. at 657. The students here were attending gym class as part of a general school curriculum. They accordingly did not voluntarily consent to be regulated more closely than the general student population, as do student athletes who choose to go out for school sports teams. *See id.*

Second, the character of the intrusion was far more invasive than the character of the urinalyses in *Vernonia*, where students remained fully clothed. Also unlike in *Vernonia*, the searches were likely to disclose much more than the limited information (presence of drugs) at issue in *Vernonia*. The boys were required to lift their shirts and to remove both their pants and underwear.

Third, the governmental interest, though of some weight, was not as great as in cases like *Vernonia*. School administrators have a real interest in maintaining an atmosphere free of theft. But, a search undertaken to find money serves a less weighty governmental interest than a search undertaken for items that pose a threat to the health or safety of students, such as drugs or weapons. *See Oliver v. McClung*, 919 F.Supp. 1206, 1218 (N.D. Ind. 1995) (finding that a strip search for money was not reasonable, but noting that the same search may have been reasonable if undertaken to find drugs or weapons). In addition, the lack of individualized suspicion also makes the government's interest less weighty. The government may have a comparatively strong interest in searching a particular student reasonably suspected of theft, because of the likelihood that the search will be successful. Such interest is diluted considerably when, instead of one, two, or three students, the school officials search over twenty students, without reason to suspect that any particular student was responsible for the alleged theft. In that case the intrusive search of each individual is that much less likely to be successful.

The highly intrusive nature of the searches, the fact that the searches were undertaken to find missing money, the fact that the searches were performed on a substantial number of students, the fact that the searches were performed in the absence of individualized suspicion, and the lack of consent, taken together, demonstrate that the searches were not reasonable. Accordingly, under *T.L.O.* and *Vernonia*, the searches violated the Fourth Amendment.

## 2. The Scope of the Searches of the Female Students

The searches of the female students also violated the Fourth Amendment. Because the searches of the female students were similar in many respects to those performed on the male students, we only briefly describe the factors that render the searches unconstitutional. As with the male students, the female students did not consent to the search, nor was there reason to suspect that any particular student was responsible for the alleged theft. The approximately five female students were required to lift their shirts and remove their pants. The girls, however, unlike the males, did not have to remove their underwear. On the other hand, unlike any allegation in regard to the search of the males, the female students were required to undress in front of one another. The fact that the searches of the females did not occur in the presence of only school officials, but rather in the presence of other students, further supports the conclusion that the searches were unreasonable. *See Reynolds v. City of Anchorage*, 379 F.3d 358, 365 (6th Cir. 2004) (in analyzing the reasonableness of a strip search occurring in a juvenile group home, the court found it important that the search was "conducted in a way designed to minimize its intrusive effect" and that the search took place "in the presence of only a single staff member").

The fact that the searches of the females were highly intrusive, the fact that the searches occurred in the presence of other students, the lack of consent, the absence of individualized suspicion, and the fact that the searches were undertaken to find money, taken together, demonstrate that the searches performed on the females in this case were not reasonable. The searches accordingly violated the Fourth Amendment.

## 3. Officer Mayrand

Assuming *arguendo* that Officer Mayrand was aware of the numerous factors that rendered the searches in this case unconstitutional, then Mayrand's action in ordering the searches of the female plaintiffs was also unlawful.

Section 1983, provides, in relevant part, that

> Every person who, under color of statute, ordinance, regulation, custom, or usage, of any State . . . subjects *or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (emphasis added). Assuming *arguendo* that Mayrand was aware of the circumstances of the searches which rendered them unconstitutional—i.e., the large number of students searched, the lack of individualized suspicion, the lack of consent, the highly intrusive nature of searches (including the fact that the male plaintiffs were forced to remove their underwear and the fact that the female plaintiffs were forced to undress in the presence of other students), and the fact that the searches were undertaken to find missing money—then Officer Mayrand's actions in ordering the search of the female plaintiffs was itself a constitutional violation.

### B. The Law Did Not "Clearly Establish" That The Searches Were Unconstitutional

Although the defendants participated in this constitutionally impermissible search, they are nevertheless protected from civil liability if their actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. The law, at the time the searches were conducted, did not clearly establish that the searches were unreasonable under the particular circumstances present in this case. Accordingly, the defendants are entitled to qualified immunity.

"When determining whether a right is 'clearly established,' we 'look first to decisions of the Supreme Court, then to decisions of this Court and other courts within our circuit, and finally to decisions of other circuits.'" *McBride v. Village of Michiana*, 100 F.3d 457, 460 (6th Cir. 1996) (citation omitted). In order for the law to be clearly established as of the date of the incident, the law must "'truly compel (not just suggest or allow or raise a question about), the conclusion . . . that what defendant is doing violates federal law *in the circumstances*.'" *Saylor v. Bd. of Educ.*, 118 F.3d 507, 515-16 (6th Cir. 1997) (quoting *Lassiter v. Ala. A & M Univ., Bd. of Trustees*, 28 F.3d 1146, 1150 (11th Cir. 1994)). An action's unlawfulness can be apparent even in novel factual circumstances "'so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Hope v. Pelzer*, 536 U.S. 730, 740 (2002) (citation omitted).

At the time of the search at issue, the prior law involving strip searches of students did not clearly establish that the defendants' actions in this case were unconstitutional. The Supreme Court cases on school searches, *T.L.O.* and *Vernonia*, set forth basic principles of law relating to school searches, yet do not offer the guidance necessary to conclude that the officials here were, or should have been, on notice that the searches performed in this case were unreasonable. *See T.L.O.*, 469 U.S. at 336-43; *Vernonia*, 515 U.S. at 652-65.

The Supreme Court has recently instructed that, for purposes of the "clearly established" inquiry, the analysis "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*,___U.S.___, 125 S.Ct. 596, 599 (2004) (quoting *Saucier*, 533 U.S at 201). Accordingly, cases "cast at a high level of generality," will only be sufficient to clearly establish the unlawfulness of the defendants' actions where the conduct at issue is "obviously" a violation based on the prior cases. *Id.* This is not such an obvious case.

In *T.L.O.*, the Court announced that school searches should be subject to a reasonableness standard. 469 U.S. at 341. In determining whether a particular search is reasonable, the Court announced a two-pronged, multi-factor test that weighs the students' interest in privacy against the school's interest in maintaining a safe learning environment. *Id.* at 341-43. Yet, the Court did little to explain *how* the factors

should be applied in the wide variety of factual circumstances facing school officials today. Accordingly, *T.L.O.* is useful in "guiding us in determining the law in many different kinds of circumstances"; but is not "the kind of clear law" necessary to have clearly established the unlawfulness of the defendants' actions in this case. *See Brosseau*, 125 S.Ct. at 599 (quoting *Pace v. Capobianco*, 283 F.3d 1275, 1283 (11th Cir. 2002)). In fact, this court has previously recognized that "the reasonableness standard articulated in *New Jersey v. T.L.O.*, has left courts later confronted with the issue either reluctant or unable to define what type of official conduct would be subject to a 42 U.S.C. § 1983 cause of action." *Williams v. Ellington*, 936 F.2d 881, 886 (6th Cir. 1991). In *Vernonia*, the Court clarified the situation only to the extent that it found that some searches undertaken without individualized suspicion are reasonable. Given the lack of a factual context similar to that of this case, *T.L.O.* and *Vernonia* could not have "truly compelled" the defendants to realize that they were acting illegally when they participated in the searches of the students in this case.

The Sixth Circuit cases involving student strip searches also do not clearly establish the unconstitutionality of the searches in the instant case. Indeed, in *Williams*, 936 F.2d 881, and *Tarter v. Raybuck*, 742 F.2d 977 (6th Cir. 1984), strip searches of students were found to be reasonable. Although the officials in each of those cases possessed individualized suspicion as to the particular student searched, the cases do not clearly state that such individualized suspicion is absolutely necessary to justify such a search. And while one district court case from this circuit, *Cales v. Howell Public Schools*, 635 F.Supp. 454 (E.D. Mich. 1985), found a strip search of a student not to be reasonable, the holding of the district court was that, although the school officials did have reasonable suspicion to suspect the particular student of violating some school rule, it did not have reason to suspect that the student was violating the rule against drug usage, the actual object of the search. While the principle of *Cales* could be argued to be analogous to a group search, the analogy is not so obvious as to establish clearly the unreasonableness of the group searches in this case. The Sixth Circuit cases thus simply do not "truly compel" the conclusion that the searches in this case were not reasonable.

Finally, we recognize that, at the time the searches were conducted, the Seventh Circuit had held that the strip search of a student in particular circumstances was not reasonable. *See Doe v. Renfrow*, 631 F.2d 91 (7th Cir. 1980) (nude body search of a 13-year-old girl following an alert by police dog). In addition, some district courts in other circuits have held student strip searches to be unreasonable in cases more closely analogous to the instant case. *See Bell v. Marseilles Elementary Sch.,* 160 F.Supp.2d 883, 891 n.9 (N.D. Ill. 2001); *Konop v. Northwestern Sch. Dist.*, 26 F.Supp.2d 1189, 1201 (D. S.D. 1998); *Oliver*, 919 F.Supp. at 1218; *Bellnier v. Lund*, 438 F.Supp. 47 (N.D.N.Y. 1977).

These cases were not sufficient to establish clearly the unlawfulness of the defendants' actions in this case. In the "rare instance" where it is proper to seek guidance from outside this circuit, the law will only be clearly established where the cases from outside this circuit "both point unmistakably to the unconstitutionality of the conduct complained of and [are] so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *Williams,* 936 F.2d at 885. The cases dealing with school strip searches from courts in other circuits are not "clearly foreshadowed by applicable direct authority," and therefore do not clearly establish that the searches in this case were unreasonable.

## III.  Conclusion

Because the searches in this case did not violate clearly established law, the defendants are entitled to qualified immunity. The denial of summary judgment is accordingly REVERSED.