*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 10a0137p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

MISTY KNISLEY, BETTY HALL, PATRICIA SCHIESER, TERESA BRYANT, ANGELA KAY SOWERS, SANDRA STEVENS, ANGELA GILBERT, JAMES ALEXANDER, FREDA CAROL SNIVELY, BARBARA HOFFER, and HEATHER M. MCCLOUD,

     *Plaintiffs-Appellees,*

   *v.*

PIKE COUNTY JOINT VOCATIONAL SCHOOL DISTRICT, VERN RIFFE CAREER TECHNOLOGY CENTER, TONI FOUT, WENDY HARPER, CHERYL SHAW, and LORNA MUSIC,

     *Defendants-Appellants.*

No. 08-3082

_____

On Remand from the United States Supreme Court.
No. 06-00097—Michael H. Watson, District Judge.

Argued:  April 29, 2010

Decided and Filed:  May 14, 2010

Before:  MARTIN, CLAY, and KETHLEDGE, Circuit Judges.

_____

## COUNSEL

**ARGUED:**  John C. Albert, CRABBE BROWN & JAMES, LLP, Columbus, Ohio, for Appellants.  Michael S. Miller, VOLKEMA, THOMAS, MILLER, BURKETT, SCOTT & MERRY, Columbus, Ohio, for Appellees.  **ON BRIEF:** John C. Albert, CRABBE BROWN & JAMES, LLP, Columbus, Ohio, for Appellants.  Michael S. Miller, Daniel R. Volkema, VOLKEMA, THOMAS, MILLER, BURKETT, SCOTT & MERRY, Columbus, Ohio, Robert R. Dever, BANNON, HOWLAND & DEVER, Portsmouth, Ohio, for Appellees.

1

_____

**OPINION**

_____

BOYCE F. MARTIN, JR., Circuit Judge.   On June 29, 2009, the United States Supreme Court vacated this Court's prior judgment in *Knisley v. Pike County Joint Vocational School District* (*Knisley I*), No. 08-3082 (6th Cir. Dec. 8, 2008), and remanded the case to this Court for further consideration in light of *Safford Unified School District #1 v. Redding*, 557 U.S. —, 129 S. Ct. 2633 (2009).  *Knisley v. Pike County Joint Vocational Sch. Dist.*, 129 S. Ct. 2893 (2009).

Our previously unpublished order, affirming the district court's denial of qualified immunity in light of *Beard v. Whitmore Lake School District*, 402 F.3d 598 (6th Cir. 2005), is reproduced below:

> The eleven plaintiffs alleged that they and every other student in their high school nursing class were subjected to unconstitutional strip searches after students in the class reported that a credit card and other items were missing.  Seeking monetary, injunctive, and declaratory relief, the plaintiffs named as defendants the Pike County Joint Vocational School District, Vern Riffe Career Technology Center, and the administrators and instructors who were involved in the searches, in their individual and official capacities.
>
> The defendants moved for summary judgment, asserting in part that they are entitled to qualified immunity.  The district court denied the defendants' motion, concluding that the defendants are not entitled to qualified immunity in light of *Beard v. Whitmore Lake School District*, 402 F.3d 598 (6th Cir. 2005).  This timely interlocutory appeal followed.
>
> We have jurisdiction to hear an interlocutory appeal of the denial of qualified immunity to the extent that the denial turns on an issue of law.  *See v. City of Elyria*, 502 F.3d 484, 489 (6th Cir. 2007).  In determining whether a defendant is entitled to qualified immunity, this court uses a two-part test: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008).  The plaintiffs argue that we lack jurisdiction over the first issue because the district court held that there was an issue of fact as to whether a constitutional right was violated.  The district court did not so hold.  Regardless, whether a constitutional right was violated is a mixed issue of

law and fact, which we treat as an issue of law, not as an issue of fact. *See City of Elyria*, 502 F.3d at 490.

The district court's denial of summary judgment on qualified immunity grounds is reviewed de novo. *Meals v. City of Memphis*, 493 F.3d 720, 728 (6th Cir. 2007). To the extent that there is a disagreement about the facts, we must review the evidence in the light most favorable to the plaintiffs and make all inferences in their favor. *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004).

The legality of a search of a student under the Fourth Amendment depends on the reasonableness of the search under all the circumstances. *New Jersey v. T.L.O.*, 469 U.S. 325, 341 (1985). Determining the reasonableness of a school search involves a two-part inquiry: (1) was the search justified at its inception, and (2) was the search reasonably related in scope to the circumstances justifying the search. *Beard*, 402 F.3d at 603-04. The Supreme Court has held that:

> Under ordinary circumstances, a search of a student by a teacher or other school official will be "justified at its inception" when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.

*T.L.O.*, 469 U.S. at 341-42 (footnotes omitted).

In *Beard*, this court found that searches of students under circumstances similar to the instant case were unreasonable and therefore violated the Fourth Amendment. A student in a gym class reported to her teacher that her prom money had been stolen during the class. *Beard*, 402 F.3d at 601. A search of the gymnasium and the students' backpacks failed to locate the money. Two male teachers then searched about twenty male students individually in the boys' shower room, with the male students lowering their pants and underwear and removing their shirts. Two female teachers took approximately five female students into the girls' locker room where the female students pulled up their shirts and pulled down their pants, without removing their underwear, while standing in a circle. *Id.*

This court assumed, without holding, that the searches of the students were justified at their inception: "That is, some search of the persons and effects of students may be warranted when substantial property has been reported recently stolen." *Id.* at 604. In considering the scope of the searches, the court looked to the three factors used by the Supreme Court

in *Vernonia School District 47J v. Acton*, 515 U.S. 646, 654-63 (1995), to evaluate searches performed in the absence of individual suspicion: "(1) the student's legitimate expectation of privacy, (2) the intrusiveness of the search, and (3) the severity of the school system's needs that were met by the search." *Beard*, 402 F.3d at 604. The court held that the searches were not reasonable and violated the Fourth Amendment based on the following facts: the nature of the searches was highly intrusive, the searches were undertaken to find missing money, the searches were performed on a substantial number of students, the searches were performed in the absence of individualized suspicion, the students did not consent, and, in the case of the female students, the searches occurred in the presence of other students. *Id.* at 603-06.

In the [present] case, two students in a nursing class reported to their instructor, Wendy Harper, that cash, a credit card, and two gift cards were missing from their purses. After this report, the fifteen or sixteen students in the nursing class were directed to sit down with their hands in sight.

The students were then taken one by one into the first aid room, where Director Keith Smith dumped out their purses and flipped through their books and another staff member, initially Lorna Music and later Cheryl Shaw, checked their shoes, socks, and pockets. After this initial search of each student was complete, each student's locker was searched.

Early on during the searches in the first aid room, a student told Smith and Shaw that an unidentified student was hiding the missing items in her bra. Smith then directed Toni Fout, a female instructor, to take the students into the restroom one at a time and have them unhook and shake their bras underneath their tops and take their pants halfway down their thighs. The plaintiffs challenge these searches in the restroom.

Assuming, as in *Beard*, that the searches were justified at the inception, the controlling issue is the reasonableness of the scope of the searches. With respect to the first factor, a legitimate expectation of privacy, the Supreme Court has held that "[a] search of a child's person . . . is undoubtedly a severe violation of subjective expectations of privacy." *T.L.O.*, 469 U.S. at 337-38. Students have a significant privacy interest in their unclothed bodies. *Beard*, 402 F.3d at 604.

The defendants argue that the plaintiffs consented to the searches based on their training and testing on the student handbook's search policy. Given the lack of mutual consent, the student handbook's search policy does not effect a waiver of the plaintiffs' privacy expectations. *See Doe ex rel. Doe v. Little Rock Sch. Dist.*, 380 F.3d 349, 354 (8th Cir. 2004). In any event, some of the plaintiffs testified that they were not aware of the search policy or that they did not understand its terms to allow the searches conducted here. The defendants also argue that the plaintiffs' failure to object to the searches or to request calls to their parents demonstrates

consent. However, the record supports that at least one plaintiff objected and was told that she had to comply, and that another asked to call her mother after being searched, and her request was denied.

As for the intrusiveness of the searches, the defendants argue that the plaintiffs did not expose any skin, were not required to remove their underwear, and were not touched. The students wore nursing scrubs with the top falling below the waist but not covering the rear. Some students exposed their stomachs while reaching under their tops to unhook and shake their bras. Fout allowed some students to lower their pants to mid-thigh level but required others to drop their pants down further to their knees or ankles. One student was not wearing underwear, while others wore thongs or "booty shorts" exposing their butt cheeks. Fout snapped one student's bra and lifted up another's top to see the student's underwear. The intrusiveness of the searches was similar to the search of the female students in *Beard*, except that the plaintiffs were not required to lift their tops all the way up and were searched individually in the presence of a single staff member rather than in front of one another. *See Beard*, 402 F.3d at 606.

Under the particular circumstances of this case, the severity of the school system's needs was slight. As this court noted in *Beard*, "a search undertaken to find money serves a less weighty governmental interest than a search undertaken for items that pose a threat to the health or safety of students, such as drugs or weapons." *Id.* at 605. The lack of individualized suspicion and the search of the entire class further diminish the defendants' interest:

> The government may have a comparatively strong interest in searching a particular student reasonably suspected of theft because of the likelihood that the search will be successful. Such interest is diluted considerably when, instead of one, two, or three students, the school officials search over twenty students, without reason to suspect that any particular student was responsible for the alleged theft. In that case the intrusive search of each individual is that much less likely to be successful.

*Id.*

The defendants argue that they had individualized suspicion of the entire group of students because everyone was sure that the theft occurred during the class and none of the students left the room. This argument is undercut by the fact that other students entered the room during the class to take photos for the yearbook. Furthermore, an "individualized suspicion" denotes that a particular person is suspected of wrongdoing rather than a group of persons who happen to be in the same place. *See Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). In the *Beard* case, as in this

case, the money was reportedly stolen during the class, and the court noted that the defendants lacked individualized suspicion because they did not have "reason to suspect that any particular student was responsible for the alleged theft." 402 F.3d at 605. Director Smith admitted that he did not have any reason to suspect one student over another. Therefore, the defendants lacked individualized suspicion.

The cases cited by the defendants in support of the constitutionality of the searches are distinguishable. While the searches in those cases were at least as intrusive as the searches conducted here, those cases all involved two factors not present here—(1) individualized suspicion of (2) possession of drugs or weapons—that weighed in the government's favor. *Jenkins ex rel. Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 823-27 (11th Cir. 1997) (drugs); *Cornfield ex rel. Lewis v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1320-24 (7th Cir. 1993) (drugs); *Williams ex rel. Williams v. Ellington*, 936 F.2d 881, 885-89 (6th Cir. 1991) (drugs); *Tarter v. Raybuck*, 742 F.2d 977, 981-83 (6th Cir. 1984) (drugs); *Richardson v. Bd. of Educ. of Jefferson County, Ky.*, No. 3:04-CV-386R, 2006 WL 2726777, at *3-*5 (W.D. Ky. Sept. 22, 2006) (explosive device); *Widener v. Frye*, 809 F. Supp. 35, 37-38 (S.D. Ohio 1992) (drugs).

In light of *Beard*, the following facts lead to the conclusion that the scope of the searches of the plaintiffs was not reasonable: the plaintiffs had a legitimate expectation of privacy in their bodies, the plaintiffs did not consent, the searches were highly intrusive, the searches were undertaken to find monetary items, the defendants searched an entire class of students, and the defendants lacked individualized suspicion. Accordingly, considering the allegations in a light most favorable to the plaintiffs, the searches violated the plaintiffs' constitutional rights under the Fourth Amendment.

The defendants may still be entitled to qualified immunity if their actions did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For a constitutional right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). To determine whether a constitutional right is "clearly established," the court looks to decisions of the Supreme Court, then to decisions of this court and courts within this circuit, and last to decisions of other circuits. *Ciminillo v. Streicher*, 434 F.3d 461, 468 (6th Cir. 2006).

The defendants argue that the *Beard* case did not place them on notice that the searches were unconstitutional, attempting to distinguish *Beard* based on the number of students involved in the searches, the location of the searches, the extent of undress required in the searches, and the presence of individualized suspicion in the instant case. As discussed

above, the defendants in this case, as in *Beard*, lacked individualized suspicion. With the exception of the extent of undress, the defendants focus on minor details. "In order for a constitutional right to be clearly established, there need not be a case with the exact same fact pattern, or even 'fundamentally similar' or 'materially similar' facts; rather, the question is whether the defendants had 'fair warning' that their actions were unconstitutional." *Cummings v. City of Akron*, 418 F.3d 676, 687 (6th Cir. 2005). Given that the *Beard* case held that searches under materially similar facts violated the Fourth Amendment, the defendants had fair warning that their actions were unconstitutional. The district court properly held that the defendants are not entitled to qualified immunity.

> For the foregoing reasons, we affirm the district court's order denying the defendants qualified immunity.

*Knisley I*, No. 08-3082 (6th Cir. Dec. 8, 2008).

The United States Supreme Court has asked us to reconsider this case in light of *Redding*, in which the Court invalidated a strip search of a female student when looking for ibuprofen tablets. *Redding*, 129 S. Ct. at 2642-43. The Court, however, found that the officials at issue were nevertheless protected by qualified immunity because (1) there was no clearly established law finding unconstitutional the strip searching of students under materially similar circumstances from the Supreme Court and (2) the appellate courts who had ruled in factually similar circumstances were not in concert. *Id.* at 2643-44. Essentially, the *Redding* defendants were entitled to qualified immunity because neither the Supreme Court nor the Ninth Circuit had clearly established case law on point[1] and there was no national consensus on this issue among the Circuits at the time of the *Redding* search. *Id.*

However, this Circuit's law on student strip searches was clearly established as early as 2005, when we published our opinion in *Beard*. We read *Redding* to affirm our constitutional holding in *Beard*. Thus, because *Beard* remains good constitutional law and because that law was clearly established at the time of the strip search in this case,

---

[1] Indeed, while the Ninth Circuit found no qualified immunity, it acknowledged that there was no pre-existing precedent directly on point. *Redding v. Safford Unified Sch. Dist. No. 1*, 531 F.3d 1071, 1087 (9th Cir. 2008) (en banc) ("That there is no case precisely on all fours does not preclude the conclusion that the Fourth Amendment right at issue was clearly established when the school officials stripped and searched [the plaintiff].").

*Redding* does not require a result contrary to that reached in *Knisley I*.  *Cf. Foster v. Raspberry*, 652 F. Supp. 2d 1342, 1352 (M.D. Ga. 2009).  Our Circuit's clearly established case law on this issue put the school and its employees on notice that this search was unconstitutional, so defendants are not entitled to qualified immunity protection.

We therefore **AFFIRM** the district court's denial of qualified immunity for defendants.