# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 6, 2008        Decided February 20, 2009

No. 07-5305

JEFFREY BARHAM, ET AL.,
APPELLEES

v.

KENNETH LEE SALAZAR, SECRETARY,
DEPARTMENT OF INTERIOR, ET AL.,
APPELLANTS

Consolidated with 07-5306

Appeals from the United States District Court
for the District of Columbia
(No. 02cv02283)

*Marina Utgoff Braswell*, Assistant U.S. Attorney, argued the cause for federal appellants. With her on the briefs were *Jeffrey A. Taylor*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney. *Rudolph Contreras*, Assistant U.S. Attorney, entered an appearance.

*Jonathan Turley* argued the cause for appellees. With him on the brief were *Carl Messineo*, *Mara Verheyden-Hilliard*, and *Daniel C. Schwartz*.

Before: SENTELLE, *Chief Judge*, and HENDERSON and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* SENTELLE.

Concurring opinion filed by *Circuit Judge* HENDERSON.

SENTELLE, *Chief Judge*: Appellant Richard Murphy, a United States Park Police official at the time of the events in question, was sued in his personal capacity for his participation in a mass arrest that occurred during demonstrations in September 2002 in protest against policies of the World Bank and International Monetary Fund. Murphy argued to the district court that he was entitled to qualified immunity, under which he would be shielded from liability. The district court denied Murphy's motion to dismiss and for summary judgment on the basis of qualified immunity, and Murphy filed the instant interlocutory appeal. Controlling precedent establishes that our jurisdiction to hear interlocutory appeals in qualified immunity cases does not extend to appeals in which the underlying decision relies upon resolution of disputed facts. Because Murphy's claim to qualified immunity depends on resolving facts in dispute, we conclude that we lack jurisdiction to review the district court's determination.

## Background

The factual history of this case has been set forth in detail before. *See Barham v. Ramsey*, 434 F.3d 565, 569-71 (D.C. Cir. 2006); *Barham v. Ramsey*, 338 F.Supp.2d 48, 52-54 (D.D.C. 2004). We will therefore focus only on the facts necessary to resolve the issue before us.

On Friday, September 27, 2002, mass demonstrations were held in Washington, D.C., protesting the meetings of the World Bank and International Monetary Fund. Around 8:15 a.m. a large group of individuals began to gather in General John Pershing Park ("Pershing Park" or "Park"), located on Pennsylvania Ave., N.W., between 14th Street and 15th Street, across from the White House grounds. At about this same time, officers of the Metropolitan Police Department ("MPD"), led by Assistant Chief Peter Newsham, began stationing around the perimeter of the Park. About an hour later, United States Park Police officers, after being informed of the gathering, arrived at Pershing Park led by appellant Major Richard Murphy, who, at that time, was Commander of the Special Forces Branch of the U.S. Park Police. Around 9:20 a.m., an MPD officer asked Murphy to assist the MPD in surrounding the Park, at which point Park Police officers were sent to the north and south sides of the Park. Murphy had two separate exchanges with MPD Assistant Chief Newsham. According to Murphy, during the first exchange, Newsham asked Murphy if those in the Park could be arrested for demonstrating without a permit. Murphy responded that they could be arrested, but that it was Park Police policy not to arrest unless the demonstrators had first been warned and given an opportunity to disperse. Soon thereafter, Newsham informed Murphy that the individuals in Pershing Park were going to be arrested for failure to obey a police order to disperse that was given to them before they entered the Park.

Around this same time MPD Chief Charles Ramsey arrived on the scene. He too was informed by Newsham that the individuals in the Park were going to be arrested. All persons in the Park were subsequently arrested for failure to obey an officer. Many of those arrested later brought suit against various police agencies and officials, alleging constitutional, statutory, and common law violations stemming from the arrests. MPD Chief Ramsey, Assistant Chief Newsham, and Park Police

Major Murphy were also sued in their individual capacities. The essence of the suit is that the defendants violated the plaintiffs' constitutional rights when the police cordoned off Pershing Park and then initiated a mass arrest. In the district court, Murphy filed a motion to dismiss the case against him on grounds of qualified immunity. Pursuant to *Int'l Action Ctr. v. United States*, "[q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" 365 F.3d 20, 24 (D.C. Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The district court denied the motion. Murphy appeals.

**Discussion**

We have had prior occasion to address two other claims of qualified immunity by police officials involved in a mass arrest. *See Barham v. Ramsey*, 434 F.3d 565, 569-71 (D.C. Cir. 2006) ("*Ramsey*"). We began our analysis there, as we do here, by noting that 28 U.S.C. § 1291 gives appellate courts jurisdiction over "final decisions" of the district courts. *Id.* at 571. Ordinarily, district court final decisions are appealable only at the conclusion of district court proceedings. There are, however, certain types of district court decisions that are too important and too independent of the merits of the action to await the end of district court proceedings before appellate review is allowed. *See Cohen v. Beneficial Indus. Loan*, 337 U.S. 541, 546 (1949). Included in this category of interlocutory appeals is a denial by the district court of qualified immunity. As we noted in *Ramsey*, qualified immunity shields certain deserving officials from undergoing the burdens of litigation, and if denial of a claim of qualified immunity were not immediately appealable then the doctrine would be eviscerated. 434 F.3d at 571. However, "this extension of appellate

jurisdiction is not endlessly elastic." *Id.* at 577. In *Johnson v. Jones*, the Supreme Court held that immediate appellate review is not allowed if a district court's decision "resolved a *fact*-related dispute about the pre-trial record." 515 U.S. 304, 307 (1995); *see also Ramsey*, 434 F.3d at 571.

In *Ramsey*, MPD Police Chief Ramsey and Assistant Police Chief Newsham moved to dismiss the suits against them under the doctrine of qualified immunity. The district court denied the motions, and on interlocutory appeal we affirmed the district court's denial of Newsham's motion. Nevertheless, we concluded that we lacked jurisdiction to review the court's denial of Ramsey's motion.

In discussing Newsham's qualified immunity claims, we first made reference to the two-part inquiry set forth in *Saucier v. Katz*, 533 U.S. 194, 201 (2001), for determining whether a government official is protected by qualified immunity.[*] *See Ramsey*, 434 F.3d at 572. Under that inquiry, a court determines the threshold question of whether, taking the facts in the light most favorable to the alleged injured party, "the facts alleged show the officer's conduct violated a constitutional right." *Id.* (quoting *Saucier*, 533 U.S. at 201). If that question is answered in the affirmative, the court then asks whether the constitutional right was clearly established. *Ramsey*, 434 F.3d at 572 (citing *Saucier*, 533 U.S. at 201). In Newsham's case, we answered the threshold question in the affirmative, as the plaintiffs' complaint was that they were arrested without probable cause while engaged in acts protected by the First Amendment. *Ramsey*, 434 F.3d at 572. We also answered the second question in the

---

[*]We note that the Supreme Court recently held "that the *Saucier* protocol should not be regarded as mandatory in all cases." *Pearson v. Callahan*, – S. Ct. –, 2009 WL 128768 (U.S.), at *11 (Jan. 21, 2009).

affirmative, finding that Newsham did not have probable cause to make the mass arrests because he "had no basis for suspecting that all of the occupants of Pershing Park were then breaking the law or that they had broken the law before entering the Park." *Id.* at 574.  And we further noted the "fluidity of movement in and around the Park," as well as Newsham's not denying that many individuals in the Park were law-abiding, as additional grounds for concluding that there was no probable cause for the mass arrest.  *Id.*  We consequently affirmed the district court's denial of Newsham's request for qualified immunity.  *Id.* at 579.

We next considered Chief Ramsey's qualified immunity claim.  *Id.* at 577-78.  We noted that, according to the record assembled for summary judgment, at some point after Newsham ordered the Park to be cordoned off, Ramsey arrived on the scene.  *Id.* at 577.  At this point,  Newsham stated to Ramsey that there was probable cause to arrest those in the Park for offenses committed before they entered the Park.  *Id.*  Ramsey stated that he was unaware that the Park contained individuals who were not previously observed engaging in unlawful activity.  *Id.* at 578.  Ramsey's situation was different from Newsham's, we observed, in that Ramsey denied knowing that the Park had not been cleared of law-abiding individuals.  *Id.* We noted that if this claim by Ramsey was valid then Ramsey might be entitled to qualified immunity.  *Id.*  But we also noted that, because of contradictions in the record concerning Ramsey's claim, this factual question could not be answered definitively.  *Id.*  Accordingly, under the Supreme Court's holding in *Johnson v. Jones*, we concluded that the denial of qualified immunity to Ramsey was not reviewable on interlocutory appeal.  *Id.* at 577-578.

In its consideration of Murphy's request for qualified immunity in the present case, the district court relied on our disposition of Newsham's qualified immunity claim in *Ramsey*.

*Chang v. United States*, Civ. Action Nos. 02-2010, 02-2283, 2007 WL 2007335, at \*10 (D.D.C. July 10, 2007). The district court first noted that, in denying Newsham's claim for qualified immunity, this court rejected Newsham's argument that there was probable cause for the arrests based on the failure to obey a police order. *Id.* The district court also noted that we held that Newsham had presented "no facts capable of supporting the proposition that Newsham had reasonable, particularized grounds to believe that every one of the 386 people arrested was observed committing a crime." *Id.* (quoting *Ramsey*, 434 F.3d at 574). Further, the court noted that this court had pointed to the fluidity of movement in and around the Park preceding the arrests as a further basis for discrediting any attempt by Newsham to argue probable cause. *Chang*, 2007 WL 2007335, at \*10 (citing *Ramsey*, 434 F.3d at 574). The district court found no relevant distinction between Murphy's conduct and Newsham's. *Chang*, 2007 WL 2007335, at \*10. In its opinion the court concluded that "Murphy cannot point to undisputed facts that suggest that the Park Police had a basis for believing that Pershing Park contained only individuals for whom there was probable cause to make an arrest." *Chang*, 2007 WL 2007335, at \*9. The court determined that, when Murphy arrived at the Park, he observed people entering and leaving the Park, he made no independent assessment of whether there was probable cause to arrest all individuals in the Park, and he did not see any violent activity by individuals there. *Chang*, 2007 WL 2007335, at \*10. The district court further determined that, although Newsham told Murphy that those in the Park were being arrested for disobeying a police order, Murphy did not know which order, who disobeyed it, or when the disobedience occurred. *Id.* Based on these determinations, the district court concluded that it was not reasonable for Murphy, in participating in the mass arrests, to rely only on Newsham's statement that all of the individuals in the Park were being arrested for failing to obey a police order. *Id.* The district court consequently denied

Murphy's motions to dismiss and for summary judgment on the ground of qualified immunity. *Id.*


On review, however, we conclude that Murphy's situation is more analogous to Ramsey's than to Newsham's, and consequently we lack jurisdiction over this interlocutory appeal. According to Murphy, early on the morning of the demonstrations, he was in Park Police mobile headquarters near the White House; his main objective at the time of the demonstrations was the security of the White House. While at mobile headquarters, Murphy received reports that protestors in different parts of the city were marching in the streets, as well as reports that intersections were being disrupted. After receiving a radio transmission that protestors were in Pershing Park, across from the White House grounds, Murphy left mobile headquarters and proceeded towards the Park. Upon arrival, he observed individuals in the Park, and he was then stopped by an MPD official who asked Murphy for Park Police help in holding those individuals in the Park. Murphy stated that at this time he was "scampering around," and that he felt this was an "urgent situation" as he wanted to prevent movement of those in the Park towards the White House. Soon thereafter, Murphy was approached by Assistant Chief Newsham, at which time Newsham asked Murphy if the group in Pershing Park had a permit to demonstrate there. After Murphy advised that the group did not, Newsham asked Murphy if those in the Park could be arrested for demonstrating without a permit. Murphy replied that they could be arrested, but that it was Park Police policy to order such groups to disperse first. Murphy then overheard a high ranking MPD official state that those in the Park had been involved in acts of vandalism and other crimes before they had arrived at the Park. A second conversation with Newsham then ensued, during which Newsham indicated to Murphy that the individuals in the Park were going to be

arrested for failing to obey a police order to get out of the street made prior to their congregating in the Park. Murphy ordered his men to assist MPD in forming lines around the Park to prevent those inside from leaving. At the same time, however, it appears that Murphy saw, at least from a distance, individuals freely coming and going from the Park.

In *Ramsey*, we noted that a critical question in deciding Ramsey's claim to qualified immunity turned on "[t]he plausibility of his claim that he thought all law-abiding bystanders had been evacuated, while hundreds of lawbreakers were corralled into an enclosed area." *Ramsey*, 434 F.3d at 578. Ramsey claimed that he did not know that Pershing Park had not been cleared of law-abiding bystanders before the mass arrests were conducted. *Id.* We found, however, that that claim was not undisputed, and consequently that *Johnson v. Jones* barred us from exercising jurisdiction over an interlocutory appeal on factual issues. *Id.* at 577-78. Here, if Murphy shows that he had an objectively reasonable "basis for believing that Pershing Park contained only individuals for whom there was probable cause to make an arrest," *id.* at 577, then he may be entitled to qualified immunity. But the record assembled so far does not lead to a determination as to whether Murphy in fact has this basis. Murphy states that he trusted Newsham that probable cause existed to arrest those in the Park. But this statement is not enough to establish an undisputed fact. Following our disposition of Chief Ramsey's claims in *Ramsey*, we conclude that Murphy's claim that he had a basis for believing that there was probable cause to arrest all individuals in Pershing Park cannot be determined on the record before us. *See id.* Moreover, this issue is not for this court to decide; rather, it is an issue to be determined by a fact finder, and "the District Court was therefore correct in allowing the claims against [Murphy] to proceed." *Id.*

## Conclusion

For the foregoing reasons we conclude that we lack jurisdiction to review the district court's denial of Murphy's motions regarding qualified immunity.

KAREN LeCRAFT HENDERSON, *Circuit Judge*, concurring: Although I agree with my colleagues that we lack jurisdiction to review the district court's denial of Murphy's claim to qualified immunity because of a factual dispute, I write separately to emphasize a point of law. In *United States v. Hensley*, 469 U.S. 221 (1985), the United States Supreme Court concluded that a police officer may make a *Terry* stop in "objective reliance" on a "flyer or bulletin . . . issued on the basis of articulable facts supporting a reasonable suspicion." 469 U.S. at 232. The Court noted that even if the flyer were issued absent reasonable suspicion, "the officers making the stop may have a good-faith defense to any civil suit." *Id.* Similarly, an officer may rely on another officer's determination of probable cause to make an arrest, which will often be the case in a rapidly evolving—and potentially deteriorating—situation like the one confronting Murphy. *See id.* at 231 ("'[E]ffective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and . . . officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information.'" (quoting *United States v. Robinson*, 536 F.2d 1298, 1299 (9th Cir. 1976)); *United States v. Loundmannz*, 472 F.2d 1376, 1379 (D.C. Cir. 1972) (probable cause exists if officer ordering arrest has "adequate first-hand knowledge to support a finding of probable cause" even though arresting officer does not have first-hand knowledge); *Daniels v. United States*, 393 F.2d 359, 361 (D.C. Cir. 1968) ("There is no requirement that the arresting officer have sufficient firsthand knowledge to constitute probable cause. It is enough that the police officer initiating the chain of communication either had firsthand knowledge or received his information from some person . . . who it seems reasonable to believe is telling the truth."). As noted by the majority, Murphy states that he relied on Newsham's determination that probable cause existed to arrest the hundreds of individuals in Pershing Park for failure to obey a police order before entering the Park. Murphy's reliance, however, must be objectively reasonable for him to be clothed

with qualified immunity. Murphy states that he "had nothing in the way of an opinion or reason . . . to contradict or not to believe what [Newsham] was telling [him] was true." Tr. of Deposition of Richard Murphy at 252:10-13, *Barham v. Ramsey*, Civ. No. 02-2283 (D.D.C. Feb. 2, 2005) (Dep. Tr.). But Murphy's statement that he "s[aw] citizens coming and going from a distance further on the south side of Pershing Park in the vicinity of 14th Street," Dep. Tr. 229:13-15, creates a genuine issue of material fact regarding whether his reliance on Newsham's determination that probable cause existed to arrest every individual in the Park was objectively reasonable. Murphy differs in this respect from Newsham, whom we earlier found not entitled to qualified immunity as a matter of law. *Barham v. Ramsey*, 434 F.3d 565, 568 (D.C. Cir. 2006). I read the majority opinion, Maj. Op. at 9, to leave open the possibility that Murphy, like MPD Chief Charles Ramsey, may yet have qualified immunity if the facts are resolved in his favor. *See Barham*, 434 F.3d at 568 ("[Ramsey's] entitlement to qualified immunity thus turns on whether he knew that the park had not been cleared of individuals who were not observed breaking the law. Based on the record assembled for summary judgment, it is not possible for us to answer that question. Because Ramsey's claim for immunity turns on the resolution of factual disputes regarding his participation in the events of September 27, 2002, his appeal is premature.").