RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0174p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

MELINDA THOMPSON, Individually and as Administrator of the Estate of Gregory Thompson, Jr.,

        *Plaintiff-Appellee,*

    *v.*

CITY OF LEBANON, TENNESSEE; DAVID MCKINLEY, Officer; MITCHELL MCDANNALD, Patrol Officer,

        *Defendants-Appellants.*

> No. 14-5711

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:11-cv-00392—Todd J. Campbell, District Judge.

Argued: June 11, 2015

Decided and Filed: July 26, 2016

Before: BATCHELDER and STRANCH, Circuit Judges; HOOD, District Judge.[*]

─────────────────

## COUNSEL

**ARGUED:** Mark E. McGrady, FARRAR & BATES, LLP Nashville, Tennessee, for Appellant City of Lebanon. Robert M. Burns, HOWELL & FISHER, PLLC, Nashville, Tennessee, for Appellants McKinley and McDannald. Andrew C. Clarke, LAW OFFICES OF ANDREW C. CLARKE, Memphis, Tennessee, for Appellee. **ON BRIEF:** Mark E. McGrady, William N. Bates, FARRAR & BATES, LLP Nashville, Tennessee, for Appellant City of Lebanon. Robert M. Burns, HOWELL & FISHER, PLLC, Nashville, Tennessee, for Appellants McKinley and McDannald. Andrew C. Clarke, LAW OFFICES OF ANDREW C. CLARKE, Memphis, Tennessee, Danese K. Banks, Ursula Y. Holmes, THE COCHRAN FIRM – MEMPHIS, Memphis, Tennessee, for Appellee.

─────────────────

[*]The Honorable Denise Page Hood, Chief United States District Judge for the Eastern District of Michigan, sitting by designation.

1

BATCHELDER, J., delivered the opinion of the court in which HOOD, D.J., joined, and STRANCH, J., joined in part.  STRANCH, J. (pp. 8–13), delivered a separate opinion concurring in part and dissenting in part.

_____

**OPINION**

_____

ALICE M. BATCHELDER, Circuit Judge.  In this interlocutory appeal from a denial of a motion for summary judgment, the defendant police officers argue that the plaintiff's evidence did not create a genuine dispute of material fact so as to overcome their assertion of qualified immunity.  We establish our appellate jurisdiction and AFFIRM.

**I.  FACTS AND PROCEDURAL HISTORY**

In the early morning hours of April 28, 2010, Gregory Thompson was driving his car erratically on a two-lane Tennessee highway.  After nearly colliding head on with City of Lebanon Police Officer David McKinley, Thompson reversed course and sped away.  Officer McKinley gave chase, later joined by fellow Officer Mitchell McDannald.  After approximately six minutes of high-speed driving, Thompson swerved, spun 360 degrees, and ran off the road into a ditch.

Once the officers came to a stop, Officer McKinley exited his patrol car, ran toward Thompson's crashed car with firearm drawn, and fired one round.  Officer McDannald followed Officer McKinley with his own firearm drawn; after Officer McKinley's shot, Officer McDannald aimed at Thompson's car and fired thirteen rounds.  The shooting ended within nineteen seconds of the crash.  Thompson sat behind the wheel of his vehicle the entire time and did not make any threatening moves.  It is unknown whether he was even conscious at the time. Thompson died at the scene due to the gunshot wounds.

Melinda Thompson, Thompson's stepmother and the administrator of his estate, sued Officers McKinley and McDannald, their supervisors, and the City of Lebanon under 42 U.S.C. § 1983 and Tennessee state law.  She alleged that Officers McKinley and McDannald used

excessive force to seize Thompson in violation of his Fourth Amendment rights, and that the other defendants were liable for the officers' actions.

All defendants moved for summary judgment, Officers McKinley and McDannald on grounds of qualified immunity. The district court noted a number of disputed facts surrounding the alleged constitutional violation, including "whether McKinley intended to shoot and the trajectory of his bullet," and "whether there continued to be a perceived risk from Thompson even after McDannald fired the first, second, third, or fourth through twelfth shots at him." Op. at 22, 28. Viewing the evidence in the light most favorable to the plaintiff, the district court held that Officers McKinley and McDannald were not entitled to qualified immunity. The court also denied the City's motion for summary judgment on Thompson's § 1983 claims of failure to screen, failure to train, and failure to supervise, investigate, and discipline, upon finding genuine disputes of material fact on these issues. Summary judgment on the state-law claims was denied on the same basis. The district court granted the officers' supervisors qualified immunity, and dismissed those defendants from the case.

Officers McKinley and McDannald then filed this interlocutory appeal, arguing that the district court erred in denying their motion for summary judgment on grounds of qualified immunity. The City joined the appeal under a theory of pendent appellate jurisdiction.

## II. ANALYSIS

Qualified immunity shields government officials from standing trial for civil liability in their performance of discretionary functions unless their actions violate clearly established rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A plaintiff who brings a § 1983 action against such an official bears the burden of overcoming the qualified immunity defense. *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013). At the summary judgment stage, the plaintiff must show that (1) the defendant violated a constitutional right and (2) that right was clearly established. *Id*. at 680. In so doing, the plaintiff must, at a minimum, offer sufficient evidence to create a "genuine issue of fact," that is, "evidence on which [a] jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 256 (1986).

If the district court determines that the plaintiff's evidence would reasonably support a jury's finding that the defendant violated a clearly established right, it must deny summary judgment. *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 609 (6th Cir. 2015). The denial of summary judgment is ordinarily not a final decision within the meaning of 28 U.S.C. § 1291 and is not immediately appealable. But the "denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of [] § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

We may decide an appeal challenging the district court's *legal* determination that the defendant's actions violated a constitutional right or that the right was clearly established. *Id.* We may also decide an appeal challenging a *legal* aspect of the district court's factual determinations, such as whether the district court properly assessed the incontrovertible record evidence. *See Plumhoff v. Rickard*, 572 U.S. --, 134 S. Ct. 2012, 2019 (2014); *Roberson v. Torres*, 770 F.3d 398, 402 (6th Cir. 2014). And we may decide, as a *legal* question, an appeal challenging the district court's factual determination insofar as the challenge contests that determination as "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Plumhoff*, 134 S. Ct. at 2020.

We may not, however, decide an appeal challenging the district court's determination of "'evidence sufficiency,' *i.e.*, which facts a party may, or may not, be able to prove at trial." *Johnson v. Jones*, 515 U.S. 304, 313 (1995). Because such a challenge is purely fact-based, it "does not present a legal question in the sense in which the term was used in *Mitchell*," *Plumhoff*, 134 S. Ct. at 2019, and is therefore not an appealable "final decision" within the meaning of 28 U.S.C. § 1291. These types of prohibited fact-based ("evidence sufficiency") appeals challenge only the plaintiff's allegations (and the district court's acceptance) of "what [actually] occurred[] or why an action was taken or omitted," *Ortiz v. Jordan*, 562 U.S. 180, 190 (2011), who did it, *Johnson*, 515 U.S. at 307, or "nothing more than whether the evidence could support a [jury's] finding that particular conduct occurred," *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996). We have also explained that the defendant-appellant may not challenge the inferences the district court draws from those facts, as that too is a prohibited fact-based appeal. *See Romo v. Largen*, 723 F.3d 670, 673–74 (6th Cir. 2013).

When legal and factual issues are confused or entwined, "we must 'separate an appealed order's reviewable determination (that a given set of facts violates clearly established law) from its unreviewable determination (that an issue of fact is "genuine").'" *Roberson*, 770 F.3d at 402 (quoting *Johnson*, 515 U.S. at 319). In the same way, we separate an appellant's reviewable challenges from the unreviewable. *DiLuzio*, 796 F.3d at 610. In other words, we "ignore the defendant's attempts to dispute the facts and nonetheless resolve the legal issue, obviating the need to dismiss the entire appeal for lack of jurisdiction." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005).

A substantial portion of the officers' brief focuses on the insufficiency of the evidence before the district court to create a material issue of fact. They claim that the evidence showed that Officer McKinley's shot was accidental, and that no evidence showed that Thompson submitted to the officers' authority. They challenge the district court's observation that Thompson may not have been conscious. We lack jurisdiction to review these arguments.

Nevertheless the officers raise three legal issues which we can decide on the basis of the plaintiff's version of the facts as recognized by the district court. On each issue, we affirm the district court's denial of summary judgment.

The first legal issue is whether Officer McKinley seized Thompson. Officer McKinley argues that the district court erred in relying on *Floyd v. City of Detroit*, 518 F.3d 398 (6th Cir. 2008), to conclude that he did. *Floyd* affirmed the denial of qualified immunity on facts similar to those in this case. Officers Quaine and Reynoso both fired their guns at Ronald Floyd under circumstances which did not justify the use of deadly force. *Id.* at 402–03. It was undisputed that Officer Quaine's bullet did not hit Floyd, and that Officer Reynoso's did. *Id.* at 402. The court reasoned that "Quaine's firing his weapon at Floyd was a show of authority that actually had the intended effect of contributing to Floyd's immediate restraint"—and it was thus a seizure. *Id.* at 406. Officer Quaine was also partially responsible for Officer Reynoso's actions because "Quaine's own use of deadly force escalated the situation by unambiguously signaling that such force was called for." *Id.* at 406–07.

*Floyd* directly applies to the plaintiff's version of the facts. The plaintiff presented evidence that Officer McKinley's shot was intentional, not accidental as he claimed. The district court summarized this evidence as follows:

> (1) McDannald's interrogatory responses stated that at the time of the shooting, "Thompson's driver side window was down," calling into question McKinley's statement that he was attempting to remove his baton to break Thompson's window; (2) there are conflicting assessments of whether the video evidence shows McKinley transitioning his weapon or stumbling; [(3)] McDannald's story about what he observed when he first started shooting has changed over time; (4) Officer Paris observed McKinley standing upright with his gun trained on Thompson while McDannald was shooting; and (5) McKinley did not initially inform the sergeant on the scene that he slipped or that his shot was accidental.

Op. at 20. On these facts Officer McKinley's shot, leading as it did to Officer McDannald's shots, "had the intended effect of contributing to [Thompson's] immediate restraint," and under *Floyd* this was a seizure. *Floyd*, 518 F.3d at 406. It does not matter that the plaintiff has admitted that Officer McKinley's bullet did not hit Thompson. *See* Appellants' Br. of Officers McKinley & McDannald, App. R. 41 at 42 (quoting the plaintiff's admission). The district court correctly applied *Floyd* to the plaintiff's version of the facts, and we affirm the district court's denial of summary judgment on this issue.

The second legal issue is whether Officer McKinley's actions—as described by the plaintiff's evidence—were objectively unreasonable, and whether the law clearly established that unreasonableness at the time of the incident. Again, on the plaintiff's version of the facts, the answer to both questions is "yes." The officers concede that "Thompson made no efforts to flee the vehicle, and that[] the total time during which McKinley exited his vehicle, ran towards the crash site, descended the embankment, gave Thompson two commands, and wielded and discharged his weapon was less than fifteen seconds." Op. at 24. And as we have already noted, the plaintiff presented evidence that Officer McKinley fired his weapon intentionally. It is clearly established that using deadly force against a suspect who does not pose a threat to anyone and is not committing a crime or attempting to evade arrest violates the suspect's Fourth Amendment rights. *Murray-Ruhl v. Passinault*, 246 F. App'x 338, 347 (6th Cir. 2007); *Ciminillo v. Streicher*, 434 F.3d 461, 467 (6th Cir. 2006). The officers cite two cases to support their contrary conclusion, but in both of these cases the discharge of the weapon was

undisputedly accidental. *Tallman v. Elizabethtown Police Dep't*, 167 F. App'x 459, 463 (6th Cir. 2006); *Leber v. Smith*, 773 F.2d 101, 105 (6th Cir. 1985). Here, because the plaintiff provided evidence that McKinley's shot was not accidental, *Tallman* and *Leber* are inapposite. We affirm the district court's denial of summary judgment on grounds of qualified immunity to Officer McKinley.

The third and final legal issue presented on appeal is whether Officer McDannald's actions were objectively unreasonable, and whether the law was clearly established. Again, looking at the plaintiff's version of the facts, we affirm the district court's denial of qualified immunity. If a jury were to believe the plaintiff's version of the events, it could find that a reasonable officer would have been on notice that firing thirteen rounds into Thompson's vehicle and person violated his Fourth Amendment rights "when Thompson had been seen to do nothing more than flee from police during the vehicular pursuit for potential driving under the influence." Op. at 25; *see also Murray-Ruhl*, 246 F. App'x at 347 (recognizing that *Tennessee v. Garner*, 471 U.S. 1 (1985), provides a clearly established right against the use of deadly force when there is no reason "to believe that the suspect pose[s] an immediate risk of death or serious danger" (quoting *Smith v. Cupp*, 430 F.3d 766, 776 (6th Cir. 2005) (alteration omitted))).

Because we conclude that the district court correctly denied the defendants summary judgment on whether Officers McKinley and McDannald committed a constitutional violation, we lack pendent appellate jurisdiction over the City's interlocutory appeal of the denial of its summary judgment motion. *See Martin v. City of Broadview Heights*, 712 F.3d 951, 963 (6th Cir. 2013) (noting that such issues are only reviewable on interlocutory appeal under the court's pendent appellate jurisdiction). We likewise lack pendent appellate jurisdiction to review the district court's denial of summary judgment on the plaintiff's state-law claims.

### III. CONCLUSION

We therefore DENY the plaintiff's motion to dismiss for lack of appellate jurisdiction as to the issues of law raised by Officers McKinley and McDannald, and we AFFIRM the district court's denial of summary judgment as to those issues. We GRANT the plaintiff's motion as to the City's appeal and in all other respects.

---

**CONCURRING IN PART AND DISSENTING IN PART**

---

STRANCH, Circuit Judge, concurring in part and dissenting in part. I concur in the majority's conclusion that we lack jurisdiction to review the defendants' evidence-based arguments and respectfully dissent from the conclusion that we have jurisdiction to review other issues. Our cases that define the limits of interlocutory appellate jurisdiction over denials of qualified immunity involving factual disputes—*Phelps v. Coy*, 286 F.3d 295 (6th Cir. 2002), *Beard v. Whitmore Lake School District*, 402 F.3d 598 (6th Cir. 2005), *Estate of Carter v. City of Detroit*, 408 F.3d 305 (6th Cir. 2005), and *McKenna v. City of Royal Oak*, 469 F.3d 559 (6th Cir. 2006)—show that we lack jurisdiction over any aspect of this case.

I dissent not because I dispute the outcome proposed by the majority but because I believe we must honor the limitations—set by Congress, the Supreme Court, and our own precedent—that govern interlocutory jurisdiction. The final judgment rule embodied in 28 U.S.C. § 1291 is deeply rooted in American law, and the exception carved out for orders denying qualified immunity is a narrow one. *See Phillips v. Roane Cty.*, 534 F.3d 531, 537–38 (6th Cir. 2008); *Starcher v. Corr. Med. Sys., Inc.*, 144 F.3d 418, 422 (6th Cir. 1998). An order denying "qualified immunity is immediately appealable only if the appeal is premised not on a factual dispute, but rather on 'neat abstract issues of law.'" *Phillips*, 534 F.3d at 538 (quoting *Johnson v. Jones*, 515 U.S. 304, 317 (1995)). There are sound policy reasons supporting this statutory limitation and our precedent defining its bounds. As the Supreme Court has cautioned, an overly permissive approach to interlocutory appeals can undermine the core function of trial courts and can diminish the efficiency and coherence of our judicial system. *See Johnson*, 515 U.S. at 309 (recognizing that "rules that permit too many interlocutory appeals can cause harm" and that such appeals "can make it more difficult for trial judges to do their basic job").

In *Estate of Carter*, we explained that if "aside from [any] impermissible arguments regarding disputes of fact, [a] defendant [appealing a qualified immunity denial] also raises the purely legal question of whether the facts alleged . . . support a claim of violation of clearly established law, then there is an issue over which this court has jurisdiction." 408 F.3d at 310

(quoting *Berryman v. Rieger*, 150 F.3d 561, 562 (6th Cir. 1998)).  *Estate of Carter* noted one other limited area of jurisdiction.  Relying on our precedent in two prior cases, *Phelps v. Coy* and *Beard v. Whitmore Lake School District*, we explained that "this court can ignore the defendant's attempts to dispute the facts and nonetheless resolve the legal issue, obviating the need to dismiss the entire appeal for lack of jurisdiction."  *Estate of Carter*, 408 F.3d at 310 (citing *Phelps*, 286 F.3d at 298–99; *Beard*, 402 F.3d at 602 n.5).  *Phelps* and *Beard* provide both the authority for and the parameters governing this proposition.  *Phelps* explains that we have jurisdiction to disregard defendants' attempts to dispute plaintiffs' facts only in cases where "the legal issues are discrete from the factual disputes[.]"  286 F.3d at 298.  *Beard* holds that interlocutory jurisdiction over appeals from denials of qualified immunity involving disputed facts only exists where "some minor factual issues are in dispute" and "it does not appear that the resolution of [such] factual issues is needed to resolve the legal issues" also presented.  402 F.3d at 602 n.5; *see also Claybrook v. Birchwell*, 274 F.3d 1098, 1103 (6th Cir. 2001).  If, on the other hand, disputed factual issues are "crucial to" a defendant's interlocutory qualified immunity appeal, we may not simply ignore such disputes and we remain "obliged to dismiss [the appeal] for lack of jurisdiction."  *Phelps*, 286 F.3d at 298; *see also McKenna*, 469 F.3d at 561.

*Beard* provides an example of "minor" factual disputes that a court has jurisdiction to overlook on interlocutory appeal:  in that case, the parties agreed that the defendant teachers strip-searched the plaintiffs, a group of male and female gym students, after one student's prom money was reportedly stolen, *see* 402 F.3d at 601–06, and the only factual disputes on appeal concerned certain details of those searches that need not be decided to "resolve the legal issue" presented, *id.* at 602 n.5.  We proceeded to find constitutional violations and to determine that the law, at the time the searches were conducted, was not clearly established. *See id.* at 606–08. *McKenna v. City of Royal Oak* lies at the other end of the spectrum and involves the type of core factual disputes that we may not ignore on interlocutory appeal because they are indivisible from the legal arguments and, thus, deprive us of jurisdiction.  There the defendant police officers had handcuffed a man who was having a seizure and contended on appeal, contrary to the district court's finding of genuine disputes, both that the plaintiff was not aware of what happened and that he had become violent and aggressive.  The officers relied on their own version of the facts to argue that the plaintiff "was not 'seized' within the meaning of the Fourth Amendment" and

that they either did not act unreasonably or that no reasonable officer could have known that their actions were unlawful. *McKenna*, 469 F.3d at 561. We dismissed for lack of jurisdiction and, in so doing, expressly distinguished *McKenna* from *Estate of Carter*:

> This case is not like *Estate of Carter*, 408 F.3d at 310, where this court found that it could "ignore the defendant's attempts to dispute the facts and nonetheless resolve the legal issue, obviating the need to dismiss the entire appeal for lack of jurisdiction," because here the officer-defendants have in fact made no legal argument for qualified immunity which can be extracted from their reliance on disputed facts.

*Id.* at 562 n.2. "It may be[,]" we observed in *McKenna*, "that purely legal arguments for granting qualified immunity relying on the facts taken in the light most favorable to McKenna could have been advanced in this case." *Id.* at 562. But "because genuine issues of material fact regarding the officers' qualified immunity claim do exist, and because the officers have in fact made no arguments concerning the denial of qualified immunity that do not rely on disputed facts, this court does not have jurisdiction over this part of their appeal." *Id.*

At least six other circuits have embraced this approach, drawing the same jurisdictional line with respect to factual disputes in interlocutory appeals from denials of qualified immunity—*i.e.*, these circuits also take as their jurisdictional starting point any facts that the district court deemed disputed and whether or not defendants' legal arguments on interlocutory appeal depend upon those facts. In *Cady v. Walsh*, 753 F.3d 348 (1st Cir. 2014), a case involving a claim of deliberate indifference to a suicidal detainee's serious medical needs, the First Circuit addressed the jurisdictional limits on such appeals, noting "that a 'district court's pretrial rejection of a qualified immunity defense is not immediately appealable to the extent that it turns on either an issue of fact or *an issue perceived by the trial court to be an issue of fact*.'" *Id.* at 359 (emphasis in original) (quoting *Stella v. Kelley*, 63 F.3d 71, 74 (1st Cir. 1995)). The First Circuit held that it lacked jurisdiction where the defendants failed to "separate their qualified immunity arguments from their merits-based ones[.]" *Id.* at 361; *see also id.* ("[N]owhere in the defendants' briefs does there appear any developed argument that the defendants are entitled to summary judgment even if the district court's conclusions about the record were correct."). "Because the defendants fail[ed] to pose even the qualified immunity question in a manner that would permit [the court] to conclude that 'the answer to it does not

depend upon whose account of facts is correct,'" the First Circuit concluded that it "lack[ed] the authority to provide an answer" and dismissed the appeal for lack of jurisdiction. *Id.* (quoting *Stella*, 63 F.3d at 75). The Fourth Circuit case *Culosi v. Bullock*, 596 F.3d 195 (4th Cir. 2010), involved a claim of excessive force during arrest based on a fatal shooting that the defendant officer contended was accidental. There the Fourth Circuit looked to "the district court's assessment of the record evidence[,]" declaring its own agreement or disagreement with that assessment to be "of no moment in the context of [an] interlocutory appeal" because the defendant cannot appeal a "summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Id.* at 201 (quoting *Johnson*, 515 U.S. at 319–20). The Fourth Circuit ultimately dismissed for lack of jurisdiction, noting that the case could turn upon the credibility of witnesses, *id.* at 201–02, and observing: "This is not a case in which the legal effect of a collection of undisputed facts points to divergent outcomes, one constitutional and the other not. Rather, this is a case, as the district court recognized, in which *the version of facts ultimately accepted by the fact finder will dictate the outcome of the constitutional inquiry*." *Id.* at 203 n.6 (emphasis in original).

The Seventh, Tenth, Third, and Fifth Circuits have all reached similar conclusions. *See, e.g.*, *White v. Gerardot*, 509 F.3d 829, 835–36 (7th Cir. 2007) (citing our *McKenna* decision with approval, and concluding "we do not have jurisdiction when, as here, all of the arguments made by the party seeking to invoke our jurisdiction are dependent upon, and inseparable from, disputed facts"); *Rosewood Servs., Inc. v. Sunflower Diversified Servs., Inc.*, 413 F.3d 1163, 1165 (10th Cir. 2005) ("Our jurisdiction is limited to reviewing denials of summary judgment based on qualified immunity when we are 'present[ed with] neat abstract issues of law. We lack jurisdiction to review a denial of summary judgment based on qualified immunity if the claim on appeal is based on disputed facts." (alteration in original) (citation omitted)); *Doe v. Groody*, 361 F.3d 232, 237 (3d Cir. 2004) ("[A] denial of qualified immunity that turns on an issue of law—rather than a factual dispute—falls within the collateral order doctrine that treats certain interlocutory decisions as 'final' within the meaning of 28 U.S.C. § 1291."); *Reyes v. City of Richmond*, 287 F.3d 346, 351 (5th Cir. 2002) ("[T]his Court has made clear that, 'to the extent that [an officer's] arguments on appeal depend upon portions of his statement of facts that differ from the facts the district court assumed, we would lack jurisdiction to consider them because

they would involve challenges to the sufficiency of the evidence.'" (second alteration in original) (citation omitted)); *see also Barham v. Salazar*, 556 F.3d 844, 847 (D.C. Cir. 2009) (citation omitted) (recognizing interlocutory jurisdiction over some appeals from denials of qualified immunity, but noting that "this extension of appellate jurisdiction is not endlessly elastic"). These examples illustrate that the jurisdictional limitations we articulated in *Phelps*, *Beard*, and *McKenna* enjoy broad support in other circuits and, indeed, are generally the law of the land.[1]

In the instant case, Officers McKinley and McDannald continue to insist on appeal that McKinley fired his weapon accidentally and that the officers' accounts of the events preceding Thompson's death are truthful, despite the district court's finding that both issues are genuinely disputed and its recognition that the credibility of each officer is in question. With respect to the first dispute, answering the factual question of whether or not Officer McKinley intended to use his weapon is a necessary prerequisite to making a legal determination about whether McKinley seized Thompson for Fourth Amendment purposes. *See, e.g.*, *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008) (citation omitted) (explaining that "the various definitions of 'seizure' contained in [Fourth Amendment] precedents connote an intentional interference with a person's liberty by physical force or a show of authority that would cause a reasonable person consciously to submit"). Similarly, knowing the particular facts and circumstances that confronted the officers in the moment they killed Thompson is essential to determining whether or not the officers' actions were objectively reasonable as a matter of law. *See Graham v. Connor*, 490 U.S. 386, 397 (1989) ("[T]he 'reasonableness' inquiry in an excessive force case is an

---

[1]The Supreme Court's decision in *Plumhoff v. Rickard*, 134 S. Ct. 2012 (2014), does not affect these long-recognized limitations. The First Circuit recognized as much in *Cady v. Walsh*, which referenced both *Johnson* and *Plumhoff* in denying appellate jurisdiction. *See* 753 F.3d at 358–59. In *Plumhoff*, the Court likened the summary judgment order on appeal to the order at issue in *Scott v. Harris*, 550 U.S. 372 (2007), and affirmed the circuit court's exercise of interlocutory jurisdiction on that basis. *See Plumhoff*, 134 S. Ct. at 2020 ("The District Court order here is not materially distinguishable from the District Court order in *Scott v. Harris*, and in that case we expressed no doubts about the jurisdiction of the Court of Appeals under § 1291. Accordingly, here, as in *Scott*, we hold that the Court of Appeals properly exercised jurisdiction[.]"). *Scott* created a narrow exception to the jurisdictional rules articulated in *Johnson*, allowing courts of appeal to assert interlocutory jurisdiction over denials of summary judgment that blatantly contradict record evidence. *See Moldowan v. City of Warren*, 578 F.3d 351, 370 (6th Cir. 2009) ("In trying to reconcile *Scott* with the Supreme Court's edict in *Johnson*, this Court has concluded that 'where the trial court's determination that a fact is subject to reasonable dispute is blatantly and demonstrably false, a court of appeals may say so, even on interlocutory appeal.'" (citation omitted)). There is no claim in this case that the district court's assessment of the facts was "blatantly and demonstrably false," *id.*; consequently, the *Scott*/*Plumhoff* exception is not implicated here.

objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."). With respect to the record evidence on summary judgment, the district court found that submitted video evidence from McKinley's dashboard camera is ambiguous, that "there are conflicting assessments by the parties' expert witnesses as to what occurred during the shooting[,]" that a third officer's "statements suggest a different series of events than what was reported by McKinley and McDannald," and that "numerous inconsistencies in McKinley and McDannald's accounts call their narratives into doubt, in addition to other significant reasons that a jury might question their credibility." (R. 27, PageID 8610.)

These factual disputes are neither "minor[,]" *Beard*, 402 F.3d at 602 n.5, nor "immaterial to the legal issues raised by the appeal," *Claybrook*, 274 F.3d at 1103 (citation omitted). Rather, they are the basis of the legal arguments that McKinley and McDannald present to this panel: that no Fourth Amendment seizure took place and that neither McKinley's nor McDannald's actions were objectively unreasonable. Because the officers' factual assertions are crucial to their claims, I would hold that governing precedent obliges us to dismiss this case for lack of jurisdiction and return it to the district court for the trial judge to undertake the core function of trial courts—supervise trial proceedings before the jury assigned to hear this case.