STRANCH, Circuit Judge,
concurring in part and dissenting in part.
I concur in the majority’s conclusion that we lack jurisdiction to review the *373 defendants’ evidence-based arguments and respectfully dissent from the conclusion that we have jurisdiction to review other issues. Our cases that define the limits of interlocutory appellate jurisdiction over denials of qualified immunity involving factual disputes — Phelps v. Coy, 286 F.3d 295 (6th Cir. 2002), Beard v. Whitmore Lake School District, 402 F.3d 598 (6th Cir. 2005), Estate of Carter v. City of Detroit, 408 F.3d 305 (6th Cir. 2005), and McKenna v. City of Royal Oak, 469 F.3d 559 (6th Cir. 2006) — show that we lack jurisdiction over any aspect of this case.
I dissent not because I dispute the outcome proposed by the majority but because I believe we must honor the limitations — set by Congress, the Supreme Court, and our own precedent — that govern interlocutory jurisdiction. The final judgment rule embodied in 28 U.S.C. § 1291 is deeply rooted in American law, and the exception carved out for orders denying qualified immunity is a narrow one. See Phillips v. Roane Cty., 534 F.3d 531, 537-38 (6th Cir. 2008); Starcher v. Corr. Med. Sys., Inc., 144 F.3d 418, 422 (6th Cir. 1998). An order denying “qualified immunity is immediately appealable only if the appeal is premised not on a factual dispute, but rather on ‘neat abstract issues of law.’ ” Phillips, 534 F.3d at 538 (quoting Johnson v. Jones, 515 U.S. 304, 317, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995)). There are sound policy reasons supporting this statutory limitation and our precedent defining its bounds. As the Supreme Court has cautioned, an overly permissive approach to interlocutory appeals can undermine the core function of trial courts and can diminish the efficiency and coherence of our judicial system. See Johnson, 515 U.S. at 309, 115 S.Ct. 2151 (recognizing that “rules that permit too many interlocutory appeals can cause harm” and that such appeals “can make it more difficult for trial judges to do their basic job”).
In Estate of Carter, we explained that if “aside from [any] impermissible arguments regarding disputes of fact, [a] defendant [appealing a qualified immunity denial] also raises the purely legal question of whether the facts alleged ... support a claim of violation of clearly established law, then there is an issue over which this court has jurisdiction.” 408 F.3d at 310 (quoting Berryman v. Rieger, 150 F.3d 561, 562 (6th Cir. 1998)). Estate of Carter noted one other limited area of jurisdiction. Relying on our precedent in two prior cases, Phelps v. Coy and Beard v. Whit-more Lake School District, we explained that “this court can ignore the defendant’s attempts to dispute the facts and nonetheless resolve the legal issue, obviating the need to dismiss the entire appeal for lack of jurisdiction.” Estate of Carter, 408 F.3d at 310 (citing Phelps, 286 F.3d at 298-99; Beard, 402 F.3d at 602 n. 5). Phelps and Beard provide both the authority for and the parameters governing this proposition. Phelps explains that we have jurisdiction to disregard defendants’ attempts to dispute plaintiffs’ facts only in cases where “the legal issues are discrete from the factual disputes[.]” 286 F.3d at 298. Beard holds that interlocutory jurisdiction over appeals from denials of qualified immunity involving disputed facts only exists where “some minor factual issues are in dispute” and “it does not appear that the resolution of [such] factual issues is needed to resolve the legal issues” also presented. 402 F.3d at 602 n. 5; see also Claybrook v. Birchwell, 274 F.3d 1098, 1103 (6th Cir. 2001). If, on the other hand, disputed factual issues are “crucial to” a defendant’s interlocutory qualified immunity appeal, we may not simply ignore such disputes and we remain “obliged to dismiss [the appeal] for lack of jurisdiction.” Phelps, 286 F.3d *374 at 298; see also McKenna, 469 F.3d at 561.
Beard provides an example of “minor” factual disputes that a court has jurisdiction to overlook on interlocutory appeal: in that case, the parties agreed that the defendant teachers strip-searched the plaintiffs, a group of male and female gym students, after one student’s prom money was reportedly stolen, see 402 F.3d at 601-06, and the only factual disputes on appeal concerned certain details of those searches that need not be decided to “resolve the legal issue” presented, id. at 602 n. 5. We proceeded to find constitutional violations and to determine that the law, at the time the searches were conducted, was not clearly established. See id. at 606-08. McKenna v. City of Royal Oak lies at the other end of the spectrum and involves the type of core factual disputes that we may not ignore on interlocutory appeal because they are indivisible from the legal arguments and, thus, deprive us of jurisdiction. There the defendant police officers had handcuffed a man who was having a seizure and contended on appeal, contrary to the district court’s finding of genuine disputes, both that the plaintiff was not aware of what happened and that he had become violent and aggressive. The officers relied on their own version of the facts to argue that the plaintiff “was not ‘seized’ within the meaning of the Fourth Amendment” and that they either did not act unreasonably or that no reasonable officer could have known that their actions were unlawful. McKenna, 469 F.3d at 561. We dismissed for lack of jurisdiction and, in so doing, expressly distinguished McKenna from Estate of Carter:
This case is not like Estate of Carter, 408 F.3d at 310, where this court found that it could “ignore the defendant’s attempts to dispute the facts and nonetheless resolve the legal issue, obviating the need to dismiss the entire appeal for lack of jurisdiction,” because here the officer-defendants have in fact made no legal argument for qualified immunity which can be extracted from their reliance on disputed facts.
Id. at 562 n. 2. “It may be[,]” we observed in McKenna, “that purely legal arguments for granting qualified immunity relying on the facts taken in the light most favorable to McKenna could have been advanced in this case.” Id. at 562. But “because genuine issues of material fact regarding the officers’ qualified immunity claim do exist, and because the officers have in fact made no arguments concerning the denial of qualified immunity that do not rely on disputed facts, this court does not have jurisdiction over this part of their appeal.” Id.
At least six other circuits have embraced this approach, drawing the same jurisdictional line with respect to factual disputes in interlocutory appeals from denials of qualified immunity — i.e., these circuits also take as their jurisdictional starting point any facts that the district court deemed disputed and whether or not defendants’ legal arguments on interlocutory appeal depend upon those facts. In Cady v. Walsh, 753 F.3d 348 (1st Cir. 2014), a case involving a claim of deliberate indifference to a suicidal detainee’s serious medical needs, the First Circuit addressed the jurisdictional limits on such appeals, noting “that a ‘district court’s pretrial rejection of a qualified immunity defense is not immediately appealable to the extent that it turns on either an issue of fact or an issue perceived by the trial court to be an issue of fact.’ ” Id. at 359 (emphasis in original) (quoting Stella v. Kelley, 63 F.3d 71, 74 (1st Cir. 1995)). The First Circuit held that it lacked jurisdiction where the defendants failed to “separate their qualified immunity arguments from their merits-based ones[.]” Id. at 361; see also id. (“[N]o- *375 where in the defendants’ briefs does there appear any developed argument that the defendants are entitled to summary judgment even if the district court’s conclusions about the record were correct.”). “Because the defendants fail[ed] to pose even the qualified immunity question in a manner that would permit [the court] to conclude that ‘the answer to it does not depend upon whose account of facts is correct,’ ” the First Circuit concluded that it “lack[ed] the authority to provide an answer” and dismissed the appeal for lack of jurisdiction. Id. (quoting Stella, 63 F.3d at 75). The Fourth Circuit case Culosi v. Bullock, 596 F.3d 195 (4th Cir. 2010), involved a claim of excessive force during arrest based on a fatal shooting that the defendant officer contended was accidental. There the Fourth Circuit looked to “the district court’s assessment of the record evidence^]” declaring its own agreement or disagreement with that assessment to be “of no moment in the context of [an] interlocutory appeal” because the defendant cannot appeal a “summary judgment order insofar as that order determines whether or not the pretrial record sets forth a ‘genuine’ issue of fact for trial.” Id. at 201 (quoting Johnson, 515 U.S. at 319-20, 115 S.Ct. 2151). The Fourth Circuit ultimately dismissed for lack of jurisdiction, noting that the case could turn upon the credibility of witnesses, id. at 201-02, and observing: “This is not a case in which the legal effect of a collection of undisputed facts points to divergent outcomes, one constitutional and the other not. Rather, this is a case, as the district court recognized, in which the version of facts ultimately accepted by the fact finder will dictate the outcome of the constitutional inquiry.” Id. at 203 n. 6 (emphasis in original).
The Seventh, Tenth, Third, and Fifth Circuits have all reached similar conclusions. See, e.g., White v. Gerardot, 509 F.3d 829, 835-36 (7th Cir. 2007) (citing our McKenna decision with approval, and concluding “we do not have jurisdiction when, as here, all of the arguments made by the party seeking to invoke our jurisdiction are dependent upon, and inseparable from, disputed facts”); Rosewood Servs., Inc. v. Sunflower Diversified Servs., Inc., 413 F.3d 1163, 1165 (10th Cir. 2005) (“Our jurisdiction is limited to reviewing denials of summary judgment based on qualified immunity when we are ‘present[ed with] neat abstract issues of law. We lack jurisdiction to review a denial of summary judgment based on qualified immunity if the claim on appeal is based on disputed facts.’” (alteration in original) (citation omitted)); Doe v. Groody, 361 F.3d 232, 237 (3d Cir. 2004) (“[A] denial of qualified immunity that turns on an issue of law— rather than a factual dispute — falls within the collateral order doctrine that treats certain interlocutory decisions as ‘final’ within the meaning of 28 U.S.C. § 1291.”); Reyes v. City of Richmond, 287 F.3d 346, 351 (5th Cir. 2002) (“[T]his Court has made clear that, ‘to the extent that [an officer’s] arguments on appeal depend upon portions of his statement of facts that differ from the facts the district court assumed, we would lack jurisdiction to consider them because they would involve challenges to the sufficiency of the evidence.’ ” (second alteration in original) (citation omitted)); see also Barham v. Salazar, 556 F.3d 844, 847 (D.C. Cir. 2009) (citation omitted) (recognizing interlocutory jurisdiction over some appeals from denials of qualified immunity, but noting that “this extension of appellate jurisdiction is not endlessly elastic”). These examples illustrate that the jurisdictional limitations we articulated in Phelps, Beard, and McKenna enjoy broad support in other circuits and, indeed, are generally the law *376 of the land.[1]
In the instant case, Officers McKinley and McDannald continue to insist on appeal that McKinley fired his weapon accidentally and that the officers’ accounts of the events preceding Thompson’s death are truthful, despite the district court’s finding that both issues are genuinely disputed and its recognition that the credibility of each officer is in question. With respect to the first dispute, answering the factual question of whether or not Officer McKinley intended to use his weapon is a necessary prerequisite to making a legal determination about whether McKinley seized Thompson for Fourth Amendment purposes. See, e.g., Floyd v. City of Detroit, 518 F.3d 398, 406 (6th Cir. 2008) (citation omitted) (explaining that “the various definitions of ‘seizure’ contained in [Fourth Amendment] precedents connote an intentional interference with a person’s liberty by physical force or a show of authority that would cause a reasonable person consciously to submit”). Similarly, knowing the particular facts and circumstances that confronted the officers in the moment they killed Thompson is essential to determining whether or not the officers’ actions were objectively reasonable as a matter of law. See Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (“[T]he ‘reasonableness’ inquiry in an excessive force case is an objective one: the question is whether the officers’ actions are ‘objectively reasonable’ in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.”). With respect to the record evidence on summary judgment, the district court found that submitted video evidence from McKinley’s dashboard camera is ambiguous, that “there are conflicting assessments by the parties’ expert witnesses as to what occurred during the shooting[,]” that a third officer’s “statements suggest a different series of events than what was reported by McKinley and McDannald,” and that “numerous inconsistencies in McKinley and McDannald’s accounts call their narratives into doubt, in addition to other significant reasons that a jury might question their credibility.” (R. 27, PagelD 8610.)
These factual disputes are neither “minor[,]” Beard, 402 F.3d at 602 n. 5, nor “immaterial to the legal issues raised by the appeal,” Claybrook, 274 F.3d at 1103 (citation omitted). Rather, they are the *377 basis of the legal arguments that McKinley and McDannald present to this panel: that no Fourth Amendment seizure took place and that neither McKinley’s nor McDan-nald’s actions were objectively unreasonable. Because the officers’ factual assertions are crucial to their claims, I would hold that governing precedent obliges us to dismiss this case for lack of jurisdiction and return it to the district court for the trial judge to undertake the core function of trial courts — supervise trial proceedings before the jury assigned to hear this case.

. The Supreme Court’s decision in Plumhoff v. Rickard,-U.S.-, 134 S.Ct. 2012, 188 L.Ed.2d 1056 (2014), does not affect these long-recognized limitations. The First Circuit recognized as much in Cady v. Walsh, which referenced both Johnson and Plumhoff in denying appellate jurisdiction. See 753 F.3d at 358-59. In Plumhoff, the Court likened the summary judgment order on appeal to the order at issue in Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007), and affirmed the circuit court’s exercise of interlocutory jurisdiction on that basis. See Plumhoff, 134 S.Ct. at 2020 ("The District Court order here is not materially distinguishable from the District Court order in Scott v. Harris, and in that case we expressed no doubts about the jurisdiction of the Court of Appeals under § 1291. Accordingly, here, as in Scott, we hold that the Court of Appeals properly exercised jurisdiction^]”). Scott created a narrow exception to the jurisdictional rules articulated in Johnson, allowing courts of appeal to assert interlocutory jurisdiction over denials of summary judgment that blatantly contradict record evidence. See Moldowan v. City of Warren, 578 F.3d 351, 370 (6th Cir. 2009) ("In trying to reconcile Scott with the Supreme Court’s edict in Johnson, this Court has concluded that 'where the trial court’s determination that a fact is subject to reasonable dispute is blatantly and demonstrably false, a court of appeals may say so, even on interlocutory appeal.’ ” (citation omitted)). There is no claim in this case that the district court’s assessment of the facts was "blatantly and demonstrably false,” id.-, consequently, the Scott/Plumhoff exception is not implicated here.